

**RECEIVED**

*ee*

SEP 24 2024

THOMAS G. BRUTON
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

Brandie Edwards
Plaintiff,

v.

1:24-cv-08802
Judge Jeremy C. Daniel
Magistrate Judge Beth W. Jantz
RANDOM CAT 1

Judge Bernadette Barrett, Circuit Court of Cook County, Associate Judge Mitchell Benjamin Goldberg, Circuit Court of Cook County, Guardian Ad Litem Danielle Vlcek, Attorney Amil Alkass, Barry Edwards

**COMPLAINT FOR DEPRIVATION OF RIGHTS UNDER COLOR OF LAW**

**INTRODUCTION**

This is a civil action seeking damages against Defendants for committing acts, under color of law, which deprived Plaintiff of rights secured under the Constitution and laws of the United States, specifically the Fourteenth Amendment's Due Process and Equal Protection Clauses, and the Americans with Disabilities Act (ADA).

**JURISDICTION AND VENUE**

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 1983.

Venue is proper in this district under 28 U.S.C. § 1391(b) because the events giving rise to this claim occurred in this district.

**PARTIES**

Plaintiff, Brandie Edwards, is a resident of Tinley Park, Illinois.

Defendant, Bernadette Barrett, is a judge in the Circuit Court of Cook County, acting under color of state law.

Defendant, Danielle Vlcek, is a Guardian ad Litem appointed by the court, acting under color of state law.

Defendant, Mitchell Benjamin Goldberg, is an associate judge in the Circuit Court of Cook County, acting under color of state law.

Defendant, Amil Alkass, is the Defendant attorney, acting under color of state law.

Defendant, Barry Edwards, is a resident of Chicago, Illinois.

Defendant, Circuit Court of Cook County

**FACTUAL ALLEGATIONS AND ARGUMENT**

Brandie Edwards filed for Dissolution of Marriage in the Circuit Court of Cook County, Illinois, Domestic Relations Division, on April 26, 2022, Under Case No. 2022 D5 30192. The case is entitled "Re the Marriage of: BRANDIE EDWARDS, Petitioner, and BARRY EDWARDS, Respondent,".

August 6, 2024, Danielle Vlcek exhibited unprofessional behavior by ranting about her workload, expressing anger about having to appear in court on that day, and attacking the petitioner's character. Specifically, she complained about working a 14-hour day, her pay, and being extremely annoyed and inconvenienced. She also made derogatory comments about the petitioner hiring multiple attorneys. This conduct is considered outrageous and extreme as it goes beyond the bounds of decency expected of a court-appointed official. This was not the first time she complained about doing her job on this case in court.

January 29, 2024, Danielle Vlcek, stated, "the children had not told me anything about any incident that occurred between mom and dad when dad was the perpetrator over the summer." This statement is untrue and contradicts the evidence and testimonies provided by the children and other witnesses. The statement made by Danielle Vlcek demonstrates clear bias. By disregarding and/or misrepresenting the children's accounts and other evidence, she has shown partiality towards Barry Edwards. This bias undermines the integrity of the judicial process and adversely affects the fair assessment of the case.

On July 13, 2023, the court appointed a Guardian ad Litem (GAL), Danielle Vlcek, without notifying Plaintiff and without any immediate or evident need, as the initial hearing was not scheduled until July 20, 2023. This appointment was made without considering other methods of obtaining information, as required by 750 ILCS 5/506.2.

During the July 20, 2023, hearing, the court vacated Plaintiff's Emergency Protection Order (EOP) without prior notice and without allowing Plaintiff to present evidence of domestic violence. Plaintiff, appearing pro se, was frequently muted by the judge, denying the opportunity to be heard and to contest the vacating of the EOP.

The judge allowed the Guardian Ad Litem and Barry Edwards's attorney, Amil Alkass to speak without interruption, while Plaintiff was muted. This selective enforcement of courtroom procedures constitutes unequal treatment under the Equal Protection Clause of the Fourteenth Amendment.

The Guardian Ad Litem, Danielle Vlcek demonstrated bias and lack of impartiality by having prior conversations with only Barry Edwards and his attorney, Amil Alkass before the initial hearing on July 20, 2023.

The court did not provide necessary ADA accommodations during the majority of the proceedings, hindering Plaintiff's ability to participate fully despite requests for accommodations.

The court rejected all suggestions from Plaintiff for a conducive parenting schedule and allowed the Guardian Ad Litem, Danielle Vlcek to suggest a schedule detrimental to the children's best interests. The implemented 2/2 week on/off arrangement was not conducive to the children's stability and school routine.

The court demonstrated bias by accepting false statements from Barry Edwards without allowing Plaintiff to refute them. The Guardian Ad Litem, Danielle Vlcek and the judge did not consider Plaintiff's evidence, including medical records, journals documenting abuse, police reports, and witness affidavits.
July 20, 2023 and in subsequent hearings, Barry Edwards provided false testimony under oath, claiming he solely served as the primary parent for the past two years prior to July 20, 2023. This false testimony was made under the coaching of his attorney, Amil Alkass, constituting perjury and undermining the integrity of the judicial process.

On August 14, 2023, the court revoked Plaintiff's parenting rights entirely based on the Guardian Ad Litem, Danielle Vlcek's recommendations, without proper investigation or consideration of Plaintiff's evidence. This decision was made without valid medical evidence or due process, violating Plaintiff's constitutional rights. Brandie Edwards, rights as a parent has been removed 100% and her role as the mother of her children's lives has been severely destroyed. Due to these actions and behaviors, Brandie Edwards relationship with her children has severely been damaged and severe parental alienation has been caused.

In court on January 29, 2024, the Guardian Ad Litem, Danielle Vlcek, stated in open court that in her opinion, Plaintiff was inebriated when informing police of the domestic violence. This statement was made without any firsthand experience or evidence, and it was based solely on the Guardian Ad Litem, Danielle Vlcek's opinion. Such a statement is inflammatory and prejudicial, especially given the lack of evidence to support it. This action by the Guardian Ad Litem, Danielle Vlcek violates several ethical and legal standards.

The Guardian Ad Litem, Danielle Vlcek's statement about Plaintiff's alleged inebriation was based on hearsay, which is generally inadmissible in court. According to the rules of evidence,

hearsay is an out-of-court statement offered to prove the truth of the matter asserted and is not admissible unless it falls under an exception (see *Federal Rules of Evidence, Rule 802*).

The Guardian Ad Litem, Danielle Vlcek's actions may constitute professional misconduct. According to the American Bar Association's Model Rules of Professional Conduct, Rule 3.4, attorneys must not knowingly offer false evidence or make statements that are not supported by evidence.

The Guardian Ad Litem, Danielle Vlcek is required to maintain independence, objectivity, and fairness in dealings with parties and professionals, both in and out of the courtroom (*GALR 2, Washington Courts*). Making unsubstantiated claims in open court violates these ethical duties.

In December 2023, the Domestic Violence detective was informed by Barry Edwards and Guardian Ad Litem, Danielle Vlcek that the children could not be seen by the Domestic Violent abuse center. Currently, the children still have not been seen. Investigations into the children's extreme truancy and living conditions have not been conducted in a fact-finding manner. The children have missed approximately 20% of school attendance days while in the sole custody of Barry Edwards, and the Guardian Ad Litem, Danielle Vlcek refused to investigate why the children were missing so many days, falling asleep in school, not allowed to eat lunch, and receiving failing grades.

The court failed to enforce the January 29, 2024 court order related to therapy and reunification efforts, allowing Barry Edwards to violate this order continuously without consequence. Barry Edwards also, sent the children out of the state of Illinois without court consent to avoid therapy sessions. Brandie Edwards was not informing nor consented to the minor children leaving the state of Illinois.

Plaintiff's minor children have missed 20% of school for the 2023-2024 school year and received failing grades and missing assignments under their father's care. Despite being on an Individualized Education Program (IEP) due to their special educational needs, they are being coerced to get jobs, which further hinders their ability to focus on their studies. This situation constitutes educational neglect.

August 6, 2024, after a court hearing, Barry Edwards, who is Plaintiff's domestic abuser, called Plaintiff's ADA support person, Shonda Nelson, who had appeared in court as Plaintiff's support. This action frightened the support person, causing them to be unwilling to appear in future proceedings. The judge acknowledged in court that Shonda Nelson was appearing as my support person.  The intimidation of Plaintiff's ADA support person interferes with Plaintiff's right to a fair hearing and constitutes witness intimidation under federal law.

As a result of Barry Edwards' actions on August 6, 2024, Plaintiff has lost necessary ADA support, which has further impacted Plaintiff's ability to participate fully in court proceedings.

Barry Edwards committed perjury under oath, stating that he never received any child support payments during the September 17, 2024 hearing. However, he accepted a child support payment from Plaintiff in August 6, 2024, which was deducted from Plaintiff's bank account via Zelle. This false testimony constitutes perjury and was not challenged or verified by the court.

The judge held Plaintiff in contempt based on the false statements made by Barry Edwards's attorney, Amil Alkass and Barry Edwards, without requiring any supporting evidence. This decision was made despite Plaintiff's submission of factual evidence showing compliance with child support payments and other financial responsibilities.

The judge ignored Plaintiff's documented evidence demonstrating payment of school fees, medical fees, and other necessary expenses for the children. Additionally, Barry Edwards has continuously violated court-ordered therapy sessions for Plaintiff and the children, which has not been addressed by the court.

The failure to notify Plaintiff of the judge change for the September 17, 2024 hearing constitutes a violation of procedural fairness and transparency, undermining Plaintiff's right to a fair hearing.

During the September 17, 2024 hearing, Plaintiff was admonished for eating and drinking while on Zoom, yet Barry Edwards was not admonished for wearing a baseball cap during the same proceedings nor for previously driving and wearing baseball caps while testifying on Zoom. This selective enforcement of courtroom rules constitutes unequal treatment under the Equal Protection Clause.

Plaintiff's PTSD and CPTSD has never hindered the ability to care for the children over the past 23 years. Plaintiff was cleared by Hines Veteran Hospital, The University of Chicago psychiatric program and Therapist Marnie Grundman as not being mentally ill, however it is noted that the plaintiff was in a domestically abusive marriage which caused her CPTSD.

The actions of the Amil Alkass, Barry Edwards, Danielle Vlcek, Judge Barrett, and Associate Judge Goldberg have caused Plaintiff significant emotional distress, including anxiety and depression. This distress has severely impacted Plaintiff's ability to prepare for and participate in court proceedings.

All attempts to maintain a healthy relationship with the children have been willfully denied and damaged by the court's continuous rescheduling of motions filed by Plaintiff to maintain the parent-child relationship. The motions filed by Barry Edwards have consistently been addressed, while Plaintiff's motions to maintain a relationship with her children have been willfully delayed and not addressed.

Barry Edwards's attorney, Amil Alkass has consistently asked for Plaintiff to be jailed during every proceeding. This behavior can be seen as an attempt to intimidate and harass Plaintiff, which is not appropriate conduct for an attorney. According to the American Bar Association's Model Rules of Professional Conduct, specifically Rule 3.4, attorneys are required to act fairly towards opposing parties and counsel. Consistently requesting incarceration without valid grounds constitutes a violation of these ethical standards.

Despite being aware of the domestic abuse Plaintiff has faced, the judge has made no effort to address Barry Edwards's attorney, Amil Alkass's threats as required by law. According to Rule 2.15 of the Model Code of Judicial Conduct, a judge who receives information indicating a substantial likelihood that a lawyer has committed a violation of the Rules of Professional Conduct shall take appropriate action. The judge's failure to act can be seen as enabling further abuse by proxy, where the legal system is used as a tool for continued control and harassment (*Jennifers' Law*, which addresses coercive control in family court).

Pursuant to the March 27th order, the Defendant has stated an inflated amount of missed child support to the court on the September 17, 2024 court date.

Child support was not to commence until April 1, 2024. As of the date of court, only six months had elapsed, which would make the amount of missed child support only $9,540. That is a $1,630 difference! Costs for child support, school fees, medical fees, etc for the minor children paid for by the plaintiff was not considered although the plaintiff provided receipts.

There is no indication from Defendant what that additional amount is based on. Defendant purposefully reported an inflated amount to the court, knowing that the amount was inaccurate at the time he reported it to the Court.

Furthermore, when drafting the September 17, 2024 Order, Defendant committed perjury by stating in court that the plaintiff owed $11,000 but after court the defendant drafted two different versions of amount owed stating $11,170 on one order and $11,130 on another with no explanation for the varying amounts. This solidifies that Attorney Amil Alkass is just making fraudulent claims and falsifying government documentation. It makes one wonder if Defendant knows that arguments made in court by Plaintiff were accurate, even though Defendant, under oath, stated that they were not true.

Also, Defendant drafted the order wherein it reduced the amount of time the Plaintiff has to purge herself of the inflated amount, over Plaintiff's objection.

Plaintiff testified that she sent a Zelle payment for child support to Defendant and has been responsible for all the child expenses, out-of-pocket medical (therapy sessions) and education (school fees), even though the parties were ordered to be responsible on a 50/50 basis. See March 27, 2024 Order.

The order as written is highly prejudiced against the Plaintiff. Plaintiff, as a result of her Veteran background, her relationship with Defendant, and this matter, suffers from complex post-traumatic stress disorder ("C-PTSD"). The continued unfairness and distance from her children will continue to contribute to her condition.

### **Ongoing Educational Neglect and Legal Violations**

As of September 20, 2024, Plaintiff's children are still missing school attendance days, receiving failing and missing assignment grades, and the commute remains emotionally and mentally taxing on them. This is a continuation of the abuse the children suffered last school year under Barry Edwards' care, which has not been rectified nor addressed by the courts or the Guardian Ad Litem, Danielle Vlcek.

The ongoing educational neglect and failure to address these issues violate several federal and state laws designed to protect the welfare and education of children.

### **Federal Violations**

The Every Student Succeeds Act (ESSA) requires states to ensure that all children receive a fair, equitable, and high-quality education, and to close educational achievement gaps (20 U.S.C. § 6301 et seq.).

The Individuals with Disabilities Education Act (IDEA) mandates that children with disabilities are entitled to a Free Appropriate Public Education (FAPE) that meets their unique needs (20 U.S.C. § 1400 et seq.).

Under federal law, perjury is defined and penalized by **18 U.S.C. § 1621**. This statute makes it a crime to willfully provide false testimony under oath in any judicial proceeding[7]. Violations can result in fines and imprisonment for up to five years[8].

False Statements: Additionally, **18 U.S.C. § 1623** addresses false declarations before federal courts and grand juries, simplifying the prosecution of perjury by eliminating some proof problems associated with traditional perjury prosecutions[7].

## **State Violations**

Under Illinois law, parents are required to ensure their children attend school regularly. Chronic truancy is defined as missing 10% or more of school days within a 180-day period without valid cause (105 ILCS 5/26-2a).

The Illinois School Code mandates that schools and parents work together to address and prevent truancy and to ensure that children receive the education they are entitled to (105 ILCS 5/26-1 et seq.)[^10^].

Illinois School Code (105 ILCS 5/26-1 et seq.)**: The ongoing educational neglect and failure to address truancy and academic performance issues violate state laws requiring regular school attendance and cooperation between parents and schools to prevent truancy.

Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/505)**: The court's failure to address parental alienation violates state laws designed to protect the best interests of the child.

Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/505): The court's failure to address the inflated child support amount and the refusal to hear Plaintiff's cross-petition violate this statute.

Illinois School Code (105 ILCS 5/26-1 et seq.): The ongoing educational neglect and failure to address the children's truancy and academic performance violate this statute.

Illinois Code of Civil Procedure (735 ILCS 5/2-1301): The court's actions in modifying the purge period without proper notice and hearing violate this statute.

Barry Edwards' statement that he solely cared for the minor children for 2 years constitute perjury under 720 ILCS 5/32-2. According to this statute, a person commits perjury when, under oath or affirmation, they make a false statement material to the issue or point in question, knowing the statement is false.

Materiality of the False Statement: The false testimony provided by Barry Edwards was material to the custody proceedings, as it directly impacted the court's assessment of parental responsibilities and the best interests of the children.

## **Color of Law Violations**

The actions of the court and the Guardian Ad Litem, Danielle Vlcek in failing to address the ongoing educational neglect and abuse constitute a deprivation of rights under color of law. Section 242 of Title 18 makes it a crime for a person acting under color of any law to willfully deprive a person of a right or privilege protected by the Constitution or laws of the United States.

The failure to protect the children from ongoing educational neglect and abuse violates their constitutional rights to due process and equal protection under the Fourteenth Amendment.

## **Specific Laws and Statutes Violated**

In People v. White, 2011 IL 109689, the Illinois Supreme Court emphasized the importance of materiality in perjury charges, stating that for a statement to be considered perjury, it must be material to the issue at hand.

In People v. Brown, 2013 IL App (1st) 111940, the court highlighted that the prosecution must prove the defendant knowingly made a false statement under oath.

United States v. Dunnigan, 507 U.S. 87 (1993)**: This case established that a court may enhance a defendant's sentence if it is determined that the defendant committed perjury during their trial. The Supreme Court held that perjury includes giving false testimony concerning a material matter with the willful intent to provide false testimony.

Eikelberger v. Tolotti, 96 Nev. 525, 611 P.2d 1086 (1980)**: This case from the Nevada Supreme Court noted that false testimony is not civilly actionable, emphasizing that. perjury is an offense against the public and subject only to criminal law.

## **Violation of Oath of Office:**

Judges and attorneys are required to adhere to their oath of office and duties to the people. The failure to act impartially, to protect the rights of all parties, and to address misconduct constitutes a violation of their professional and ethical obligations.Violation of Judicial and Attorney Oaths:

> Judges and attorneys have a duty to uphold the law and ensure fairness and justice in their proceedings. The failure of the judge and attorneys to adhere to their oaths of office and duties to the people can be addressed as a violation of their professional responsibilities and ethical standards.

## **Parental Alienation and Legal Violations**

Since the judgement on August 14, 2023, Plaintiff, Brandie Edwards, Parental Rights were severed and her role as a parent were diminished out of her children's lives. Due to these actions, she has been severely parentally alienated from her children.

Parental alienation is recognized in Illinois as a form of psychological and emotional abuse towards a child by one parent against the other parent. Parental Alienation is considered harmful and is addressed through various statutes and legal procedures.

Under Illinois law, parental alienation can be addressed by modifying parenting time and/or parental responsibilities to protect the best interests of the child (750 ILCS 5/602.10).

Illinois courts prioritize the best interests of the child in custody and visitation proceedings, considering factors such as the child's physical, emotional, and mental well-being (750 ILCS 5/602.7).

The Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/602.5) requires parents to foster the love, respect, and affection of the child toward each parent and to cooperate fully in

implementing a relationship with the children that provides them with a maximum feeling of security.

If one parent interferes with the other parent's visitation rights due to alienating behavior, the affected parent can file a motion to enforce the visitation schedule (750 ILCS 5/607.5).

Legal consequences for parental alienation in Illinois include the possibility of modifying custody or parenting time arrangements if it is shown that one parent is actively engaging in behaviors that harm the relationship between the children and the other parent (750 ILCS 5/610.5) .

The actions described above, including the court's failure to address parental alienation, violate Plaintiff's constitutional rights under the Fourteenth Amendment's Due Process and Equal Protection Clauses, as well as Illinois statutes designed to protect the parent-child relationship.

Barry Edwards has engaged in a pattern of gaslighting, coercive and manipulative behavior gaslighting and lying to the minor children by making them believe that Plaintiff is mentally ill, that Plaintiff is the reason why therapy has not been attended, that Plaintiff does not love them, and that domestic abuse is acceptable and is allowable against woman. Barry Edwards has weaponized the children against Plaintiff using lies, manipulation, and an altered reality of court proceedings.  Barry Edwards engages minor children in falsified information regarding court proceedings that puts Brandie Edwards as the hostile, unfit, and adversarial parent . These actions constitute severe emotional and psychological abuse, which has significantly impaired the relationship between Plaintiff and her children.

## Child Psychological Abuse

Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein. Barry Edwards' actions constitute child psychological abuse as recognized under the DSM-5 (V995.51), which includes behaviors that harm a child's emotional and psychological well-being, such as gaslighting and manipulation.

## Parent-Child Relational Problem

- Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.
- Barry Edwards' actions have caused significant impairment in the relationship between Plaintiff and her children, fitting the diagnosis of Parent-Child Relational Problem (V61.20) under the DSM-5.

## Child Affected by Parental Relationship Distress (CAPRD)

- Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.
- The ongoing conflict and manipulation by Barry Edwards have negatively impacted the children's mental health, fitting the category of Child Affected by Parental Relationship Distress (CAPRD) (V61.29) under the DSM-5.

## Relevant Case Law and Statutes

- **Meyer v. Nebraska, 262 U.S. 390 (1923)**: Establishes the fundamental right of parents to make decisions concerning the care, custody, and control of their children.

- **Troxel v. Granville, 530 U.S. 57 (2000)**: Reinforces the fundamental right of parents to make decisions concerning the care, custody, and control of their children unless proven unfit.
- **Stanley v. Illinois, 405 U.S. 645 (1972)**: Establishes that parents cannot be deprived of custody without a hearing to determine their fitness.
- **Duchesne v. Sugarman, 566 F.2d 817 (2d Cir. 1977)**: Highlights the importance of judicial impartiality and fairness in custody proceedings.
- **750 ILCS 5/602.10**: Requires parents to submit a proposed parenting plan that allocates significant decision-making responsibilities and parenting time.
- **750 ILCS 5/602.7**: Outlines the best interests of the child standard in custody and visitation proceedings.
- **750 ILCS 5/602.5**: Requires parents to foster the love, respect, and affection of the child toward each parent.
- **750 ILCS 5/607.5**: Allows for the enforcement of visitation schedules if one parent interferes with the other parent's visitation rights.
- **750 ILCS 5/610.5**: Allows for the modification of custody or parenting time arrangements if one parent is engaging in behaviors that harm the relationship between the children and the other parent.

## **Parental Alienation in Illinois**

- **Definition and Recognition**: Parental Alienation in Illinois is recognized as a form of psychological and emotional abuse. Courts consider behaviors that harm the relationship between a child and a parent as detrimental to the child's well-being.

- **Best Interest of the Child Standard**: Illinois courts make custody and visitation decisions based on the best interests of the child, considering factors such as the child's physical, emotional, and mental well-being (750 ILCS 5/602.7).

- **Parental Responsibilities**: Illinois law allocates parental responsibilities, including decision-making and parenting time, to ensure that both parents can maintain a meaningful relationship with their children (750 ILCS 5/600 et seq.).

- **Modification of Custody or Parenting Time**: If one parent engages in behaviors that harm the relationship between the children and the other parent, a modification to existing custody or parenting time arrangements may be sought (750 ILCS 5/610.5).

- **Legal Consequences for Parental Alienation**: Parental Alienating behaviors should affect child custody determinations. Courts may impose additional terms and conditions, require parental education programs, or mandate family or individual counseling to address and mitigate parental alienation.

- **DSM-5 Child Psychological Abuse (V995.51)**: This category can encompass behaviors that are harmful to a child's emotional and psychological well-being, including parental alienation. Parental alienation can be considered a form of emotional child abuse, as it involves manipulating a child to reject one parent, which can have severe psychological effects.

- **DSM-5 Parent-Child Relational Problem (V61.20)**: This diagnosis is used when there is significant impairment in the relationship between a parent and child. Parental alienation fits within this category as it involves actions that damage the parent-child relationship.

- **DSM-5 Child Affected by Parental Relationship Distress (CAPRD) (V61.29)**: This category is used when a child's mental health is negatively impacted by parental conflict, including behaviors associated with parental alienation.

### **Violations of Constitutional and Statutory Rights**

1. **Due Process Clause (Fourteenth Amendment)**: The actions leading to parental alienation violate Brandie Edwards' due process rights by depriving her of a fair opportunity to maintain a relationship with her children without valid evidence or a proper hearing (U.S. Const. amend. XIV, § 1)[4].

2. **Equal Protection Clause (Fourteenth Amendment)**: The unequal treatment in custody and visitation matters, favoring Barry Edwards and contributing to parental alienation, violates the Equal Protection Clause (U.S. Const. amend. XIV, § 1)[4].

3. **Color of Law Violations (42 U.S.C. § 1983)**: The actions of the court and other involved parties, under color of law, have deprived Brandie Edwards of her constitutional rights, warranting legal redress under 42 U.S.C. § 1983[4].

4. Prince v. Massachusetts, 321 U.S. 158 (1944)**: The Court held that states may prosecute parents when they expose their children to serious hazards to their well-being. This case underscores the state's role in protecting children's welfare while balancing parental rights[5].

5. **Matter of Aaron H. v. James G. (2012)**: This case involved allegations of family offenses, including threats and verbal abuse. The court recognized the importance of addressing such behavior to protect the well-being of the involved parties[1].

6. **C.C. v. J.A.H. (2020)**: In this case, the court examined the impact of abusive behavior and threats in the context of family law. The court emphasized the need to ensure a fair and respectful legal process[2].

7. This consistent rescheduling and prolonging of Plaintiff's motions and concerns while prioritizing Barry Edwards's motions and concerns is a violation of Plaintiff's due process rights under the Fourteenth Amendment, as established in **Meyer v. Nebraska, 262 U.S. 390 (1923)** and **Troxel v. Granville, 530 U.S. 57 (2000)**. Furthermore, the apparent bias in favor of Barry Edwards contravenes the principles of judicial impartiality and fairness, as highlighted in **Stanley v. Illinois, 405 U.S. 645 (1972)** and **Duchesne v. Sugarman, 566 F.2d 817 (2d Cir. 1977)**.

8. Plaintiff was not notified of the change in the presiding judge for the hearing on September 17, 2024. This lack of notification violates procedural fairness and transparency, undermining Plaintiff's ability to prepare adequately for the hearing.

9. The actions of the judge have contributed to severe parental alienation, as evidenced by Plaintiff's son not speaking to Plaintiff for over a year and claiming to be afraid of Plaintiff, and Plaintiff's daughter expressing fears about Plaintiff's mental health without any basis. This aligns with the recognized phenomenon of parental alienation, which has been acknowledged in cases such as **Tammy Lee Martin v. Jeffrey Allan Martin**.

10. The integrity of the family court system relies on the fair and impartial administration of justice. The actions described above undermine this integrity and have caused significant harm to Plaintiff and the children.

**LEGAL CLAIMS**

**Count I: Violation of Due Process Rights (42 U.S.C. § 1983)**

Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

Defendants, acting under color of law, deprived Plaintiff of due process rights guaranteed by the Fourteenth Amendment by vacating the EOP without notice, muting Plaintiff during hearings, and revoking parental rights without valid evidence, proper investigation, or a proper hearing.

- **Fourteenth Amendment - Equal Protection Clause**: The selective enforcement of courtroom procedures and unequal treatment of Plaintiff compared to Barry Edwards constitute a violation of the Equal Protection Clause.

As a direct and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer emotional distress, financial loss, and loss of parental rights.

**Count II: Violation of Equal Protection Rights (42 U.S.C. § 1983)**

Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

Defendants, acting under color of law, discriminated against Plaintiff in violation of the Equal Protection Clause of the Fourteenth Amendment by selectively enforcing courtroom procedures and requiring only Plaintiff to undergo a mental health evaluation.

As a direct and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer emotional distress, financial loss, and loss of parental rights.

**Count III: Discrimination Based on Disability (Americans with Disabilities Act)**

Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

Defendants discriminated against Plaintiff based on disability by subjecting Plaintiff to a mental health evaluation solely due to a PTSD diagnosis, while not requiring the same of Barry Edwards.

As a direct and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer emotional distress, financial loss, and loss of parental rights.

**Count IV: Educational Neglect**

Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

Defendants failed to ensure the children's educational needs were met, resulting in significant academic and emotional challenges for the children. This constitutes educational neglect.

As a direct and proximate result of Defendants' actions, Plaintiff's children have suffered and continue to suffer academically and emotionally.

## **Count V: Professional Misconduct**

Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

Barry Edwards's attorney, Amil Alkass's repeated requests for Plaintiff's incarceration constitute professional misconduct, creating a hostile environment and significantly impacting Plaintiff's ability to present the case effectively.

As a direct and proximate result of Barry Edwards's attorney, Amil Alkass's actions, Plaintiff has suffered and continues to suffer emotional distress and an inability to effectively participate in legal proceedings.

## **Count VI: Domestic Violence and Child Welfare**

Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

The failure to allow the children to be seen by the Domestic Violence abuse center and the lack of investigation into the children's truancy and living conditions constitute a failure to protect the children from harm.

As a direct and proximate result of Defendants' actions, Plaintiff and the children have suffered and continue to suffer emotional and psychological harm.

## **ADDITIONAL FACTUAL ALLEGATIONS**

## **Count VII: Witness Intimidation (18 U.S.C. § 1512)**

Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

Barry Edwards' actions in calling and intimidating Plaintiff's ADA support person, Shonda Nelson constitute a violation of 18 U.S.C. § 1512, which prohibits intimidating or threatening a witness in an official proceeding. Intimidating Plaintiff's ADA support person constitute witness intimidation, which is a federal crime.

As a direct and proximate result of Barry Edwards' actions, Plaintiff has suffered and continues to suffer emotional distress and a lack of necessary support during court proceedings.

## **Harassment and Intimidation:**
  - **720 ILCS 5/12-7.3**: Barry Edwards' actions also constitute harassment and intimidation under Illinois law, which are criminal offenses.

## **Count VIII: Violation of ADA Rights**

Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

**42 U.S.C. § 12101 et seq**.The intimidation of Plaintiff's ADA support person, Shonda Nelson, also constitutes a violation of the Americans with Disabilities Act (ADA), which ensures that individuals with disabilities have the right to necessary accommodations and support.  The intimidation of Plaintiff's ADA support person and the failure to provide necessary accommodations violate the ADA, which ensures that individuals with disabilities have the right to necessary support and accommodations.

 As a direct and proximate result of Barry Edwards' actions, Plaintiff has been deprived of necessary ADA accommodations, impacting Plaintiff's ability to participate fully in court proceedings.

## **Count IX: Harassment and Intimidation**

 Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

Barry Edwards' actions constitute harassment and intimidation, which are criminal offenses under Illinois law (720 ILCS 5/12-7.3).

On September 17, 2024, the parties appeared before this court for a hearing on Defendant's Petition for Rule to Show Cause for Petitioner's failure to pay child support.

On said date, after a hearing, the court found Plaintiff in contempt of this Court's March 27, 2024 order, wherein it ordered Plaintiff to pay $1,590/month for child support for the parties' minor twins to the Defendant, beginning April 1, 2024.

As a result, Defendant informed the court that the outstanding support was in the amount of $11,000 as of the date of the September 17th court date. The Plaintiff tried to contest this amount and show documentation but was rendered silent by the court.

Furthermore, the court gave the Plaintiff 30 days to purge herself of the $11,000 amount.

On this date, Plaintiff had a cross-petition that was to be heard immediately after Defendant's petition, but the court rejected the hearing and further delayed her order, so petition was not allowed to be heard.

Plaintiff requested a short date "to have her petition heard" since it relates to Defendant's petition and could have an effect on the court's ruling in Defendant's petition.

As a result, the Court gave another continuance date to further delay Plaintiff's petition heard on Defendant's failure to bring the minor children to family therapy sessions, which could result in the minor twins being able to be returned to Plaintiff's care.

When the parties presented the order to the court, the wording changed and shortened the length of time originally granted to Plaintiff to purge herself from 30 days to only 20 days for the $11,000 amount stated in court by the Defendant.

Based on this information, Plaintiff brings this instant motion.

## **APPLICABLE LAW**

1. The purpose for filing a §1301 petition is to bring to the attention of the trial court facts not of record that if known when judgment was entered would have prevented the judgment's

rendition. Manning v. Meier, 114 Ill.App.3d 835, 449 N.E.2d 560 (4th Dist. 1983). §1301 is also used to prevent enforcement of a judgment when it would be unfair, unjust, or unconscionable. Smolinski v. Vojta, 363 Ill. App. 3d 752, 757, 844 N.E.2d 989, 994 (1st Dist. 2006) (quoting Smith v. Airoom, Inc., 114 Ill. 2d 209, 225, 499 N.E.2d 1381, 1388 (Ill. 1986)) (emphasis added). A §1301 is a plea to the trial court's equitable powers, whose exercise is necessary to prevent an injustice. Leavens, Armiros & Ross, Ltd. v. English, 203 Ill.App.3d 16, 560 N.E.2d 1031 (1st Dist. 1990). This Court has plenary discretion to vacate an order pursuant to §1301 of the Illinois Code of Civil Procedure.

2. It is in the court's discretion to grant or deny a §2/1301(e) motion and the two factors that it may consider are the diligence of the moving party and the existence of any meritorious defenses. Wells Fargo Bank, N.A. v. McCluskey, 2012 Il.App (2d) 110961 (2012).

3. "An order is final and appealable when it terminates the litigation between the parties on the merits or disposes the rights of the parties either on the entire controversy or on a separate part thereof." Blott v. Hanson, 283 Ill. App. 3d 656, 660, 670 N.E.2d 345, 218 Ill. Dec. 848 (1996).

4. The true test of finality is if it finally determines the rights and obligations of the parties, without leaving matters of substantial controversy for subsequent resolution. McCaffrey v. Nauman, 204 Ill. App. 3d 761, 764, 562 N.E.2d 628, 150 Ill. Dec. 98 (1990).

5. A rule to show cause is one means by which to bring an alleged contemnor before the trial court when the failure to comply with a court order is the alleged contemptuous behavior. In re Marriage of Rizza, 237 Ill. App. 3d 83, 87 (1992), citing In re Marriage of Betts, 200 Ill. App. 3d 26, 52-53 (1990) (Betts V); see also Ex Parte Petrie, 38 Ill. 498, 501-02 (1865).

6. If contempt sanctions are imposed for coercive purposes—to compel the contemnor to perform a particular act—the contempt is civil in nature. On the other hand, criminal contempt sanctions are imposed for the purpose of punishing past misconduct." Betts V, 200 Ill. App. 3d at 43.

7. Indirect civil contempt of court is imposed to coerce the contemnor to perform acts that were due. See In re Marriage of Berto, 344 Ill. App. 3d 705 (Ill. App. Ct. 2003).


**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Declare that Defendants' actions violated Plaintiff's constitutional rights;

B. Award Plaintiff compensatory and punitive damages in an amount to be determined at trial;

C. Award Plaintiff reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988;

E. Seek jail time for the Defendant(s) to the maximum allowed.

F. Issuing a rule instanter against Defendant, BARRY EDWARDS, to show cause, if any, why he should not be held in contempt of court for his failure to bring minor children to therapy and maintain a healthy relationship with their mother;

G. Entering an order issuing appropriate sanctions against the against Defendent, Barry EDWARDS for indirect civil contempt for his failure to comply with the terms of the Order entered on January 29, 2024, and to coerce his compliance with same, including a period of incarceration up to six (6) months in duration with the Cook County Department of Corrections;

H. Vacate, dismiss, and nullify any and all orders, rulings, judgments, and decrees entered against Plaintiff, Brandie Edwards, in this case, including but not limited to the order dated August 14, 2023, and any and all orders related to custody and child support.

B. Dismiss all orders and child support obligations against Plaintiff, including but not limited to the order dated March 27, 2024, and any subsequent orders including any and all interest thereon;

C. Order the immediate return of Plaintiff's children to her custody and restore all parental rights and responsibilities to Plaintiff;

D. Order Barry Edwards to pay for all therapy and counseling costs for Plaintiff and her children, including past, present, and future expenses;

E. Hold Barry Edwards liable for all costs Plaintiff has endured due to legal and financial abuse, including but not limited to legal fees, court costs, and any other related expenses;

F. Expedite the divorce proceedings and issue a ruling in Plaintiff's favor, granting her a divorce from Barry Edwards;

G. Award Plaintiff compensatory and punitive damages in an amount to be determined at trial for the emotional distress, financial loss, and other harms suffered as a result of Defendants' actions;

H. Reinstatement of Order of Protection: That the Court reinstate the Order of Protection against Barry Edwards, providing the Plaintiff with necessary protection and ensuring the safety and well-being of the Plaintiff and any minor children involved.

I. Psychological Examination: That the Court order Barry Edwards to undergo a comprehensive psychological examination to assess his mental health and its impact on his behavior and interactions, particularly concerning the safety and welfare of the minor children.

J. Grant such other and further relief as the Court deems just and proper.

**\*\*JURY DEMAND\*\***

Plaintiff demands a trial by jury on all issues so triable.

Dated: September 24, 2024

Respectfully submitted,

Brandie Edwards
17342 Cambridge Place
Tinley Park, Illinois 60487
773-841-6836
brandie4415@yahoo.com
---

**Citations and Case Law:**

- **Color of Law Violations:** 18 U.S.C. § 242
- **Due Process Clause:** U.S. Const. amend. XIV, § 1
- **Equal Protection Clause:** U.S. Const. amend. XIV, § 1
- **Americans with Disabilities Act:** 42 U.S.C. § 12101 et seq.
- **Relevant Case Law:**
  - **Meyer v. Nebraska, 262 U.S. 390 (1923)**
  - **Pierce v. Society of Sisters, 268 U.S. 510 (1925)**
  - **Smith v. City of Fontana, 818 F.2d 1411 (9th Cir. 1987)**
  - **Troxel v. Granville, 530 U.S. 57 (2000)**
  - **Stanley v. Illinois, 405 U.S. 645 (1972)**
  - **Duchesne v. Sugarman, 566 F.2d 817 (2d Cir. 1977)**
  - **Jennifers' Law**
- **Witness Intimidation:** 18 U.S.C. § 1512
- **Americans with Disabilities Act:** 42 U.S.C. § 12101 et seq.
- **Harassment and Intimidation:** 720 ILCS 5/12-7.3
- **Every Student Succeeds Act (ESSA):** 20 U.S.C. § 6301 et seq.
- **Individuals with Disabilities Education Act (IDEA):** 20 U.S.C. § 1400 et seq.
- **Illinois School Code:** 105 ILCS 5/26-1 et seq.
- **Chronic Truancy Definition:** 105 ILCS 5/26-2a
- Financial Exploitation: 720 ILCS 5/17-56
  - Elder Justice Act: 42 U.S.C. § 1397j
  - Illinois Domestic Violence Act: 750 ILCS 60/103
  - Violence Against Women Act (VAWA): 42 U.S.C. § 13925
  - Deprivation of Rights Under Color of Law: 18 U.S.C. § 242
- **In re Marriage of Bates, 212 Ill.2d 489 (2004)**: Illinois courts have acknowledged the harmful effects of parental alienation and have taken steps to address this issue within custody and visitation proceedings[1].
- **Tammy Lee Martin v. Jeffrey Allan Martin**: This case highlights the recognition of parental alienation as a significant factor in custody disputes, emphasizing the need to protect the parent-child relationship[3].
- Child Psychological Abuse (V995.51)**: Recognizes the emotional and psychological harm caused by behaviors such as parental alienation.
- - **Parent-Child Relational Problem (V61.20)**: Addresses significant impairment in the parent-child relationship.
- - **Child Affected by Parental Relationship Distress (CAPRD) (V61.29)**: Recognizes the impact of parental conflict on a child's mental health.

I, Brandie Edwards, being duly sworn, depose and say that I have read the foregoing complaint and that the facts stated therein are true and correct to the best of my knowledge and belief.

_Brandie Edwards_
[Name]

_September 24, 2024_
[Date]

Evidence of Danielle Vicek, GAL, inebriated comment on page 1 and her opinion Dad statement) Be

was not the DV offender.

STATE OF ILLINOIS )
                    )  SS:
COUNTY OF C O O K  )

          IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
          COUNTY DEPARTMENT-DOMESTIC RELATIONS DIVISION

     IN RE:  THE MARRIAGE OF        )
                                     )
     BRANDIE EDWARDS,                )
                                     )
               Petitioner,           )
                                     )  No.  22 D5 30192
                         VS.         )
                                     )
     BARRY EDWARDS,                  )
                                     )
               Respondent.           )

          REPORT OF PROCEEDINGS HAD at the hearing of the

above-entitled cause, before the Honorable BERNADETTE

GARRISON-BARRETT, one of the Judges of said Division, on the

29th day of January, 2024.

PRESENT:

          MS. REBECCA A. DAY
               Appeared on behalf of the Petitioner;

          MR. AMIL ALKASS,
               Appeared on behalf of the Respondent.

Charles T. Coleman
Official Court Reporter
Circuit Court of Cook County, Illinois
Fifth Municipal District

1

THE COURT: Good morning, Miss Day. How are you?

MS. DAY: I am good, judge. How are you this morning?

THE COURT: Good. What matter are you here on?

MS. DAY: I am here on Edwards, 22 D 530192, but Danielle is my GAL, and now I don't see her in here.

THE COURT: We will go grab her back.

MR. ALKASS: Good morning, judge. I am here on Edwards as well.

THE COURT: Good morning, Mr. Alkass. How are you?

MR. ALKASS: Good. How are you?

MS. DAY: I represent the petitioner, judge. I forgot to mention that and she is present on Zoom.

THE COURT: Good morning, Miss Edwards.

So we are back here on status after the substitution of attorneys.

MS. VLCEK: Yes. So I had an opportunity to speak to mom's new counsel, and she has been making some really great progress in terms of getting mom to agree to engage in some therapy and then also possibly expand to make some therapy with the minor children.

I had mentioned that I would start drafting an order, but I have just been in and out and swamped and haven't been able to draft it and circulate it yet, but I am -- I did tell Miss Day that I am in support of the minor children

2

attending therapeutic sections with their mom. Right now we are waiting on the 215 evaluation. I know funds are limited. Mom has been a little resistant doing the 215 evaluation.

So you know the given age of the children, their high school, and the fact that they also would not mind going to counseling with their mom, I know I specifically -- Brielle called me on a number of occasions and told me that she would love to do some therapy with her mom. So I can set out some parameters, like don't talk about court. I think I did this in another case with your Honor where I listed out a whole long laundry list of things that, you know, don't talk about this, don't talk about that, engage this way.

So mom was going to do some therapy on her own. We find a therapist to work with her and the children and we see how that progresses and they can have some parenting time in that environment and see how the kids are doing. I would be in support of that.

I did have some concerns because I kept getting a call from a detective. I spoke with Detective Trinidad from the Tinley Park Police Department on a variety of occasions. Mom has made another domestic violence report against dad from an incident that allegedly occurred last summer.

On one of the occasions, Detective Trinidad called me and told me that mom called her and sounded

3

inebriated and under the influence. I had some similar kind of concerns on the occasion when I got voicemails or calls, so I do think that there is still some work that needs to be done in terms of behavior, but I can't stop her from making domestic violence reports. It's within her right to do that. I do believe that dad was working to get the kids to go and have a VSI conducted.

When I spoke with Detective Trinidad, the children had not told me anything about any incident that occurred between mom and dad when dad was the perpetrator over the summer. So I advised her that obviously she wants to talk with the children. I am out. I am not involved in that. She just called me simply to help schedule and then with her concerns about mom being under the influence when she called. But I do think therapy would make some progress here. They need to get divorced. This has been a long case.

So I think the parties can -- hopefully these two very intelligent and hardworking attorneys can get the financial part of this wrapped up and then I can make a report, maybe we follow some sort of therapeutic step-up schedule or something. I am in support of that.

MS. DAY: And just to be clear, I know when we spoke on that the therapy and the upgrade to therapy with the family and then upgrade to therapy when the children are ready would be in

4

lieu of the 215. Do I still have that right, counsel?

MS. VLCEK: Yes. I would be in support of putting like a stay on the 215 evaluation. But, of course, if there was any other concerning behavior, anything raised, then we can go back and address that. But given the age of the kids, we are looking at another three years before they emancipate. They are old enough to articulate how they are feeling, and they are very good at contacting me. Brielle will text me and say "hey, can you call me when I get out of school," and we stay in contact. So, yes, that would be -- I would say maybe we just put a stay on it. If the court would agree with that, I know your Honor has been very helpful.

THE COURT: The court will agree with that. Mr. Alkass, any response?

MR. ALKASS: No. I guess would be okay with the therapy. I just like to see the proposed order so we will get there.

Regarding the police, though, my client has -- my client's older daughter has reached out to the detective and they are just not responsive. So we are trying to get that scheduled so that the kids can do their VSI interview, but we just haven't been able to schedule it yet. But short of that, I think the GAL summarized everything accurately.

THE COURT: So how much time do you guys want before you come back? Do you want to give it enough time so the children

5

can do some therapy with mom?

MS. VLCEK: 60 days.

MR. ALKASS: That's fine.

MS. DAY: That works.

THE COURT: That's 60 days. Any financial issues, see if you guys can complete discovery on.

MR. ALKASS: Yes, judge. I don't think we have scratched the surface on discovery at all. We have been so focused on the children that we haven't even discussed the financial components. I will exchange financial affidavits with Miss Day and we can go from there.

THE COURT: And then initiate any discovery after the exchange of the financial affidavits before the 60 days. Okay.

MS. DAY: What do you think, Amil, 21 days for a financial exchange?

MR. ALKASS: Yes, that works.

THE COURT: As long as you initiate any discovery before you come back, that will work with the court. Okay?

MS. DAY: Okay. No, thank you, judge.

THE COURT: Okay. We will see you guys back at the end of March, beginning of April.

THE PETITIONER: Thank you.

(WHICH WERE ALL THE PROCEEDINGS HAD)

*****

6

STATE OF ILLINOIS  )
                         ) SS:
COUNTY OF C O O K  )

        IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
        MUNICIPAL DEPARTMENT-FIFTH MUNICIPAL DISTRICT

    I, CHARLES T. COLEMAN, an Official Court Reporter in the Circuit Court of Cook County, Municipal Department, Fifth Municipal District, do hereby certify that I reported in shorthand the proceedings had at the hearing of the aforementioned cause; that I thereafter caused the foregoing to be transcribed, which I hereby certify to be a true and accurate transcript taken to the best of my ability of the proceedings had before the Honorable BERNADETTE GARRISON-BARRETT, Judge of said Court.

_____
           Official Court Reporter

Dated June 27, 2024
CSR# 084-003101

7

*Emergency order of protection*



**SHERIFF'S OFFICE OF COOK COUNTY**
**AFFIDAVIT OF SERVICE**

| | | | | | | |
|---|---|---|---|---|---|---|
| **CASE NUMBER:** 2022D530192 | **SHERIFF NUMBER:** 03760996 | **MULT. SER.:** 1 | **DOC. TYPE:** ORDofPRO |

| | | | |
|---|---|---|---|
| **DIE DATE:** 06/11/2023 | **RECEIVED DATE:** 06/06/2023 | **FILED DATE:** 06/06/2023 | **DIST:** 615 |

| | |
|---|---|
| **DEFENDANT:** EDWARDS, BARRY JR | **PLAINTIFF:** EDWARDS, BRANDIE |
| **ADDRESS:** 5224 S MICHIGAN | **ATTORNEY:** PRO SE |
| **CITY:** CHICAGO | **ADDRESS:** |
| **STATE:** IL **ZIP CODE:** 60615 | **CITY:** , |
| **ATTACHED FEE AMT:** | **STATE:** **ZIP CODE:** 00000 |

**SERVICE INFORMATION:** RTN 6-13-2023 ZOOM H23C7684

**I CERTIFY THAT I SERVED THE DEFENDANT/RESPONDENT AS FOLLOWS:**

☐ **(1) PERSONAL SERVICE:** BY LEAVING A COPY OF THE WRIT/ORDER WITH THE DEFENDANT/RESPONDENT PERSONALLY, AND INFORMING DEFENDANT/RESPONDENT OF CONTENTS.

☐ **(2) SUBSTITUTE SERVICE:** BY LEAVING A COPY OF THE SUMMONS AND COMPLAINT AT THE DEFENDANT'S USUAL PLACE OF ABODE WITH A FAMILY MEMBER OR PERSON RESIDING THERE, 13 YEARS OR OLDER, AND INFORMING THAT PERSON OF THE CONTENTS OF THE SUMMONS. ALSO, A COPY OF THE SUMMONS WAS MAILED TO THE DEFENDANT AT HIS OR HER USUAL PLACE OF ABODE ON THE  DAY OF _ 20.

☐ **(3) UNKNOWN OCCUPANTS:** BY LEAVING A COPY OF THE SUMMONS AND COMPLAINT NAMING "UNKNOWN OCCUPANTS" WITH A PERSON OF THE AGE OF 13 OR UPWARDS OCCUPYING SAID PREMISE.

☐ **(4) CORP/CO/BUS/PART:** BY LEAVING THE APPROPRIATE NUMBER OF COPIES OF THE SUMMONS, COMPLAINTS, INTERROGATORIES, JUDGMENTS, CERTIFICATIONS AND NOTICES WITH THE REGISTERED AGENT, AUTHORIZED PERSON OR PARTNER OF THE DEFENDANT CORPORATION ____COMPANY____BUSINESS _____ PARTNERSHIP ___

☐ **(5) PROPERTY RECOVERED:** NO ONE PRESENT TO RECEIVE ORDER OF COURT. ORDER POSTED IN PLAIN VIEW.

☐ **(6) S.O.S/D.O.I.:** BY LEAVING THE SUMMONS AND COMPLAINT WITH THE SECRETARY OF THE STATE/DIRECTOR OF INSURANCE OF THE STATE OF ILLINOIS, AN AGENT OF SAID DEFENDANT LISTED ABOVE. ANY AGENT OF SAID CORPORATION NOT FOUND IN THE COUNTY OF COOK.

☐ **(7) CERTIFIED MAIL**

**\*\*\*\* COMPLETE THIS SECTION IF WRIT IS A THIRD PARTY CITATION/GARNISHMENT \*\*\*\***

**(8)** AND BY MAILING ON THE ___ DAY OF _____ 20 ____ A COPY OF THE THIRD PARTY GARNISHMENT/CITATON SUMMONS AND NOTICE TO THE JUDGMENT DEBTOR'S LAST KNOWN ADDRESS AS INDICATED IN THE NOTICE WITHIN (2) BUSINESS DAYS OF SERVICE UPON GARNISHEE/THIRD PARTY DEFENDANT.

**THE NAMED DEFENDANT WAS NOT SERVED FOR THE GIVEN REASON BELOW:**

☑ (01) NO CONTACT     ☐ (05) WRONG ADDRESS     ☐ (09) DECEASED
☐ (02) MOVED     ☐ (06) NO SUCH ADDRESS     ☐ (10) NO REGISTED AGENT
☐ (03) EMPTY LOT     ☐ (07) EMPLOYER REFUSAL     ☐ (11) OUT OF COOK COUNTY
☐ (04) NOT LISTED     ☐ (08) CANCELLED BY PLAINTIFF ATTY     ☐ (12) OTHER REASON (EXPLAIN)

**EXPLANATION:** COMMON DOOR LOCKED RANG BELL PER CURRENT RESIDENT SUBJECT IS UNKNOWN

**WRIT SERVED ON:** _____

**SEX:** **RACE:** **AGE:** _____

| ATTEMPTED SERVICES | | |
|---|---|---|
| Date | Time | Star # |
| 06/07/2023 | 19:12:00 | # 16700 |

**THIS** 07 **DAY OF** June 20 23
**TIME:** _____

THOMAS J. DART,
SHERIFF, BY: /S/ BURKE, JAMES #16700 , DEPUTY



# SHERIFF'S OFFICE OF COOK COUNTY
## AFFIDAVIT OF SERVICE

**CASE NUMBER:** 2022D530192   **SHERIFF NUMBER:** 03760996   **MULT. SER.:** 1   **DOC. TYPE:** ORDofPRO

**DIE DATE:** 06/11/2023   **RECEIVED DATE:** 06/06/2023   **FILED DATE:** 06/06/2023   **DIST:** 615

| Date | Time | Star # |
|---|---|---|
| 06/07/2023 | 19:12:00 | # 16700 |

Page 2 of 2

(12/01/20) CCCR 0100

## CONFIDENTIAL *PROTECTIVE ORDER INFORMATION SHEET* FOR SHERIFF'S USE ONLY

FILED
4/28/2022 10:20 AM
IRIS Y. MARTINEZ
2022D530192
CIRCUIT CLERK
COOK COUNTY, IL
2022D530192
Calendar, Y
17638072

**Respondent's Name:** Barry Edwards

**Alias Names (including maiden name)**

Case No. 2022D530192

Sheriff's No. 2022D530192

**Additional Alias Information**

### CAUTION INFORMATION

- [ ] History of mental illness
- [ ] Suicidal Tendencies
- [ ] Likely to be under the influence of Alcohol
- [ ] Likely to be under the influence of Drugs
- [ ] Likely to carry a Weapon
- [ ] Weapon(s) in the home

If yes to either question, please specify type and location of weapon(s):

| Sex | Age | Date of Birth | Race | Skin Tone |
|-----|-----|---------------|------|-----------|
| M | 44 | 10/1/77 | Black | Black |

| Height | Weight | Hair | Eyes | Glasses |
|--------|--------|------|------|---------|
| 5' 10" | 180 | Bald | Brown | N/A |

**Tatoos, Scars, Birthmarks, Moustache, Beard?**

Goatee

**Known Address**

17342 Cambridge Place, Tinley Park, Illinois 60487

**Work Address**

- [ ] Is the Subject on Court Order of Protection?

If yes, what County?:

**Name of Business**

**Alternative Address(es) for Service**

### FOR SHERIFF'S USE ONLY

- [ ] Gang Member
- [ ] Parole
- [ ] Sex Offender
- [ ] Valid FOID

**Respondent's Phone Number:** Unknown

**Service Information:** For Service information please provide as much information as possible, i.e.,: best hours to serve, C/D information, un it or apartment number, type of building, business name, type of work performed...

#### Type of Service

- [ ] Service Only
- [ ] Put-out/Stay Away
- [ ] RO2  [ ] RO3  [ ] R14
- [ ] Return Minor Child(ren)
- [ ] Seizure Warrant (R14.5)
- [ ] Warrant for Firearm
- [ ] Affidavit in Support of Warrant & Order
- [ ] Active Warrant
- [ ] CCDOC
- [ ] IDOC/Parole

| Vehicle | Vehicle Model | Year |
|---------|---------------|------|
| Equinox | Chevy | 2017 |

**Color:** Grey   **License Plate:**   **License State:**

**Notes/Additional Information**

**Petitioner's Name:** Brandie Edwards

**Phone:** 773841683 6 **Cell:**   **Alternative Phone:**

Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois   cookcountyclerkofcourt.org

Page 1 of 1

Disposition Order    (This form replaces CCG-0081 and CCG-0682)                           (10/05/05) CCG N804

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Brandie Edwards  (brandie4415@yahoo.com)

**Petitioner**

v.

Barry Edwards

**Respondent**

Any order of protection which would expire on a court holiday shall instead expire at the close of the next court business day. 750 ILCS 60/220 (f)

CASE NO. 2022D530192

LEADS NO. _____

RESPONDENT'S D.O.B. _____

### DISPOSITION ORDER
Orders of Protection

☐ Independent Petition
☐ Domestic Relations
☐ Criminal Proceeding

**THE COURT FINDS THAT:**

(Strike if inapplicable)

☐ An Emergency Order of Protection was issued on __June 6__, 2023 .

☐ An (Interim/Plenary) Order of Protection was issued on _____, _____.

☐ An (Emergency/Interim/Plenary) Order of Protection was previously extended on _____, _____.

**THE COURT HAVING JURISDICTION OF THE SUBJECT MATTER IT IS HEREBY ORDERED THAT:**

1. ☑ The Emergency Order of Protection is extended to: __July 10,__ , 2023 at __5pm__ .m.
   Date
   OR
   ☐ The (Interim/Plenary) Order of Protection previously issued is hereby extended to:

   _____, _____ at _____.m.
   Date

2. ☑ A hearing on the Emergency Order of Protection is set for __July 10__ , 2023 at __1:30pm__ .m.
   Date
   OR ☐ A hearing on the (Interim/Plenary) Order of Protection is set for _____, _____ at _____.m.
   Date

   in the Court located at __via zoom (zoom information 960-9602-2670, Pass code 263971)__ / _____ .
   Address                                                                                   Room No.

3. ☐ The Emergency Order of Protection is vacated.
   OR ☐ The (Interim/Plenary) Order of Protection is vacated.

4. ☐ The Emergency Order of Protection is terminated.
   Or ☐ The (Interim/Plenary) Order of Protection is terminated.

5. ☐ The Emergency Order of Protection is modified as follows:
   OR ☐ The (Interim/Plenary) Order of Protection is modified as follows:

6. ☐ Alias Summons to issue
   ☐ Service by publication

7. ☐ Case Number _____ is dismissed.

Atty. No.: _____

Name: _____

Atty. for: Order of Court

Address: _____

City/State/Zip: _____

Telephone: _____

Judge Bernadette Barrett
Judge Bernadette Barrett
JUN 13 2023
Circuit Court - 2319

ENTERED:

Date: 6|13|29 ,

#2319

Judge                                   Judge's No.

**IRIS Y. MARTINEZ, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

1. ORIGINAL - COURT FILE

*September 17, 2024 order*

4210 - Held In Contempt Of Court - Allowed
4437 - Law Enforcement Agency to Comply - Allowed
4676 - Party to Purge - Allowed
4309 - Bond Set At - Allowed
9203 - Stay Of Execution
4436 - Clerk's Office to Comply - Allowed

(Rev. 12/01/20) CCDR 0032 A

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION Associate Judge Mitchell Benjamin Goldberg

IN RE: THE MARRIAGE/CIVIL UNION OF

BRANDIE EDWARDS

SEP 18 2024

Circuit Court - 2300

PETITIONER          NO: 22 D 530192

AND

BARRY EDWARDS          CALENDAR: 65

RESPONDENT

## ORDER OF ADJUDICATION OF INDIRECT CIVIL CONTEMPT AND / OR ORDER OF COMMITMENT

This cause being heard this date pursuant to a rule to show cause directed to

BRANDIE EDWARDS                                      (hereinafter "contemnor") to show cause, if any s/he has,
         (name)

why s/he should not be found in indirect civil contempt and sanctioned forthwith, for failure to comply with the Court's order entered on MARCH 27, 2024 , directing contemnor to PAY CHILD SUPPORT IN THE AMOUNT OF $1,590.00/MONTH FOR CHILD SUPPORT

And the Petitioner/Respondent appearing:
☑ in person and ☑ with counsel, and the contemnor likewise appearing ☑ in person and ☑ with counsel;

And the Court, having heard the testimony of the parties and witnesses, together with all pleadings, exhibits, and arguments of counsel, and being fully advised in the premises, hereby finds that:

1.  The Court has jurisdiction of the parties and subject matter;

2.  On the 27TH day of MARCH , 2024 this Court entered an order directing the contemnor to PAY CHILD SUPPORT TO RESPONDENT IN THE AMOUNT OF $1590.00/MONTH

*perJury*

3.  As of the 17TH day of SEPTEMBER , 2024 , contemnor has failed to: PAY ANY CHILD SUPPORT TO RESPONDENT SINCE ENTRY OF THE MARCH 27, 2024 ORDER

Counsel for Petitioner: juneitha@shambeelaw.com; GAL: vlceklaw@gmail.com          (OVER)

IRIS Y. MARTINEZ, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

(Rev. 12/01/20) CCDR 0032 B

4. The contemnor has not given any legally sufficient reasons for failure to comply with said order, even though s/he had, and still has, the means to comply with said order, and that contemnor's failure to comply with said order is willful and contumacious;

*perJnry* (5.) The conduct of the contemnor has defeated and impaired the rights and interests of the Petitioner/Respondent and has further impeded and obstructed the Court in its administration of justice; and

IT IS THEREFORE ORDERED AND ADJUDGED that the contemnor:

☑ Is hereby found and declared to be in indirect civil contempt of Court for willful failure to obey the Court's order as herein stated;

☑ Is ordered committed to the Cook County Jail, there to remain until s/he shall have purged him/herself of contempt by: *purge of money owed totalling (MG)* PAYING $11,130.00 BY OCTOBER 7, 2024

☑ Commitment is stayed until __OCTOBER 7__, __2024__ s/he purges the contempt by posting $ __11,130.00__ with the Clerk of the Circuit Court.

☐ The Clerk of the Court is directed to prepare a certified copy of this Order and submit same to the Sheriff of Cook County.

☑ HEARING ON PETITIONER'S PETITION FOR RULE TO SHOW CAUSE (FAMILY THERAPY) AND MOVANT, SHAMBEE LAW OFFICE, LTD. ARE SET FOR IN-PERSON HEARING ON OCTOBER 7, 2024 @ 1:00 P.M. ALL PARTIES AND COUNSELS TO APPEAR IN-PERSON. STATUS OF OCTOBER 3, 2024 IS STRICKEN BY AGREEMENT OF COUNSELS.

Associate Judge Mitchell Benjamin Goldberg

SEP 18 2024

Circuit Court-2300

Atty. No.: 63765

Name: AMIL ALKASS/JANUARY FAMILY LAW, LLC.

Atty. for: RESPONDENT

Entered: SEPTEMBER 17, 2024

Address: 180 W. WASHINGTON, SUITE 1000

City/State/Zip: CHICAGO, ILLINOIS 60602

Telephone: 224.225.5277/amil@januarylawchicago.com

Judge                                    Judge's No. 2300

IRIS Y. MARTINEZ, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

11:58

< Activity        Payment Details

(CI)

Receipt and
proof of Child
Support payment
being made and
accepted to

Barry Edwards
via zelle to
his phone number.

## Payment sent to Childrens Info.
### 312-772-0161



✓ Completed

**08/06/2024**

| | |
|---|---|
| Status | Payment delivered |
| Memo | Child Support |
| Sent from | USAA CLASSIC CHECKING |
| Enrolled as | BARRY |
| Zelle® ID | USA7XL4OFYJV |
| USAA ID | 5868395833 |

4405 Pre-Trial Assignment, 4406 Status Report, 4482 Hearing/Trial Assignment, 4295 Close Discovery-Allowed.

Orders of Continuance

(12/01/20) CCDR 0015

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION

IN RE THE ☑ MARRIAGE ☐ CIVIL UNION ☐ CUSTODY
☐ SUPPORT OF:

No. 2022 D 530192

BRANDIE EDWARDS
_____
PETITIONER

AND

Calendar _____

BARRY EDWARDS
_____
RESPONDENT

### ORDERS OF CONTINUANCE

THIS CAUSE being properly before the Court on motion of ☐ Petitioner ☐ Respondent ☑ Agreement of Counsel, and the Court being advised in the premises:

☑ IT IS ORDERED that this cause is set for:

☑ **STATUS REPORT** regarding GAL REPORT/INVESTIGATION _____
4406
on OCTOBER 3 _____, 2024 , at 11:00 AM _____.m. before this Court.

☐ **PRE-TRIAL CONFERENCE** on _____, _____, at _____ .m. before this Court.
4405
    ☐ All parties shall be present.

☑ **HEARING/TRIAL** regarding CROSS-PETITIONS FOR RULE TO SHOW CAUSE _____
4482
on SEPTEMBER 17 _____, 2024 , at 1:30PM _____.m. before this Court.

☑ All parties to appear in Courtroom 202 (VIA ZOOM) on the stated date and time.
4250

☐ Discovery is closed as of _____, _____.
4295

☐ PETITIONER/RESPONDENT is granted leave to file _____
and the PETITIONER/RESPONDENT is granted _____ days to respond to said pleading.

☐ _____
_____

**NOTE:** CASES SET FOR TRIAL CAN ONLY BE CONTINUED FOR CAUSE ON MOTION PURSUANT TO SUPREME COURT RULE AND DOMESTIC RELATIONS GENERAL ORDER 86-D-1.

GAL: vlceklaw@gmail.com; Counsel for Brandie Edwards: juneitha@shambeelaw.com

Atty. No.: 63735

Name: Amil Alkass/January Family Law, LLC

Atty. for: Respondent

Address: 180 W. Washington, Suite 1000

City/State/Zip: Chicago, Illinois 60602

Telephone: 224.225.5277/office@januarylawchicago.com

ENTERED:

Judge Bernadette Barrett

AUG 09 2024

Dated: _____ Circuit Court - 2319 , _____

Judge

2319
Judge's No.

**IRIS Y. MARTINEZ, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Case# 2022D530192

FILED
5/1/2024 10:17 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022D530192
Calendar, Y
27499812

# Affidavit of Brandie Edwards

State of Illinois
County of Cook

Brandie Edwards, being duly sworn, deposes and says:

## Introduction

1. I am the Petitioner/Movant in the above-entitled proceeding.
2. I make this affidavit to bring to the court's attention the behaviors of Respondent Barry Edwards, which I believe are detrimental to our children and constitute violations of Illinois family law.

## Background

1. I, Brandie Edwards, and Barry Edwards are the natural-born parents of Brielle Edwards and Barry Edwards III.
2. There have been ongoing issues regarding parental dynamics and communication affecting the well-being of our children.
3. There has been detrimentally observable changes in our children's behavior, mental state, academic performance, and emotional state that correlate with the alleged behavior.

Allegations of Abusive Behavior

1. Emotional Manipulation and Denigration:
   - Barry Edwards consistently portray me negatively to our children, using false accusations and derogatory language.
   - He has accused me of financial neglect and labeled me as a "deadbeat" parent and claims their basic needs are not meet because of me.
   - Despite my efforts, Barry Edwards obstructs the children's ability to communicate with me, refusing to provide them with basic necessities like a phone.
Emotional Manipulation and Denigration**:
   - Accusing me in front of and around children, of not contributing financially to the children's needs.
      - Obstructing our children's ability to reach out to me.
   - Refusing to provide basic necessities (such as a phone) for direct communication.
   - Our children caught in the crossfire, torn between loyalty to both parents

2. Communication and Access:
   - Barry Edwards has planned to cut off telephone communication between the children and me.
   - Barry Edwards suggests that it is the children's responsibility to remember to call, thereby placing undue pressure on them.
   - Barry Edwards uses emotionally charged language to negatively influence the children's feelings towards me, suggesting that I do not love or want them.
   - Barry Edwards has sent messages directly to my personal phone outside of Talking parents on April 1, 2024.
   - Barry Edwards Criticizes my co-parenting choices and insulting me parent through texts or calls.
      - Implying that I don't love or want our children.
      - Using our children to relay messages and manipulate them.

Case# 2022D530192

- Barry Edwards used Coercion during phone calls (e.g., April 19th, 2024, and the week of April 22, 2024).
-Barry Edwards Emotional Manipulates our children by spreading lies/rumors.
-Barry Edwards has interfered with my parenting time by ignoring the court ordered therapy sessions for me and our children.
—Barry Edwards used Brielle to call to make the excuse of why they cant come to therapy during April 2024 due to her dad responses.

3. Selective Disclosure:

- Barry Edwards selectively shares and often falsifies information about court proceedings, domestic abuse/violence, and finances with our children, creating a one-sided narrative to frighten our children.
- Barry Edwards Prevents the children from forming an accurate and balanced view of both parents.

1. The behaviors of Barry Edwards, as outlined above, are harmful to our children and are in violation of the following statutes:
   - 750 ILCS 5/603.10
   - 705 ILCS 5/602.5 (a) (c) (11)
   - Illinois Criminal Code of 2012
   - Illinois Domestic Violence Act of 1986
   - Order filed January 29, 2024

2. I request that the court take these allegations seriously and prioritize the well-being of our children in any forthcoming decisions.

I affirm under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

*Brandie Edwards* signed May 1, 2024
Brandie Edwards

Subscribed and sworn to before me this ___ day of _____, 20__.

_____
Notary Public

Case# 2022D530192

FILED DATE: 5/1/2024 10:17 AM 2022D530192

## VERIFICATION ON OATH OR AFFIRMATION WITH AFFIANT STATEMENT

State of _Illinois_ } ss.

County of _Cook_

☐ See Attached Document (Notary to cross out lines 1–7 below)
☐ See Statement Below (Lines 1–7 to be completed only by document signer[s], *not* Notary)

1 _____

2 _____

3 _____

4 _____

5 _____

6 _____

7 _Brandie Edwards_____

**Signature of Document Signer No. 1**

**Signature of Document Signer No. 2 (if any)**

Subscribed and sworn to (or affirmed) before me

this _1st_ day of _May_ , _2024_ , by
   *Day*      *Month*    *Year*

_Brandie   Edwards_____

**Name of Signer No. 1**

_____

**Name of Signer No. 2 (if any)**

```
Official Seal
IMANOL ESCOGIDO
Notary Public, State of Illinois
Commission No. 985990
My Commission Expires January 24, 2028
```

_____

**Signature of Notary Public**

**Place Notary Seal/Stamp Above**

_____

**Any Other Required Information**
*(Residence, Expiration Date, etc.)*

――――――――――――― **OPTIONAL** ―――――――――――――

*Completing this information can deter alteration of the document or*
*fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: _AFFidavit of Brandie Edwards_

Document Date: _5-01-24_ _____ Number of Pages: _2_

Signer(s) Other Than Named Above: _____

©2020 National Notary Association

M2010-02 (09/2021)

Used for states (DE, GA, IA, IL, KS, MD, MI, MN, MT, NC, ND, NH, OK, OR, WA, WV, WI)

# Timeline of Events

A)     In April 2022, I filed for Divorce from a 23 year marriage due to infidelity and domestic abuse. I filed stated that I wanted 50/50 shared custody so that our children can still be in both of our lives.

B)     I have Hines Military hospital records showing the domestic abuse from 2020 until 2023

C)     I have Tinley Park Police records from 2021 until 2023 documenting the domestic abuse

D)     June 7, 2023 Barry Edwards strangled me in front of our children at my home and emergency protection order was issued

E)     July 14, 2023 A GAL and the fathers attorney was assigned to the case without any notification given to me.

F)     In July 20, 2023 A Family Court hearing was scheduled without notification to me and I was called from court staff to attend court via zoom:

   1)  I appeared Pro Se because I was never informed of the assignment of a GAL, Court, nor that the father hired an attorney. The GAL stated that she and the father has held prior conversations directly prior to July 20, 2023

   2)  The GAL & Judge vacated the EOP immediately during the proceeding. I was never given notice prior to the court date informing me that my EOP was to be addressed and during the proceeding I was put on mute as a pro se and denied to present evidence of the domestic violence and be heard. (Medical records, journals, police report, witnesses, affidavits, etc)

   3)  I was not allowed any of my ADA accommodations needed the proceedings.

   4)  The judge rejected all suggestions for a conducive parenting schedule for our children and allowed the GAL to suggest a schedule that was functionally and mentally detrimental to the best interest of our children. The schedule was 2/2 week on/off opposed to a schedule suggested and agreed upon by the parents to allow our children a more stable and conducive schedule for school and their lifestyle.

   5)  The father was scripted to make false statements like specifically stating he was the sole parent involved in our children's education for the last **(2 years)** and that I was **mentally ill** for those same years. Evidence would have shown that both were lies, but I was unheard and denied to present and defense and evidence refuting the lies.

G)     During my scheduled 2 week parenting time, the father immediately began violating and abusing me and our children from August 7 until August 11th 2023. I reached out to the GAL to ask her to inform and request she stop the harassment, and she angrier conveyed that I was bothering her and on Saturday August 12, 2023 she schedule an emergency court hearing for August 14th by which my parenting rights were revoked at 100% and I was not allowed contact with my children from a court order issued that day. Also, the GAL throw a mental 215 on me with restrictions even if I am found not to be mentally ill.

H)      The father was living homeless with our children until October 2023 and chose to move 22 miles away from their school and home to alienate me from my children and to make their drive to school extremely harsh on their mental and emotional well being.  The court/GAL was never admitted evidence, did not make fact findings nor analyzations regarding domestic abuse, nor make any recommendations in the  "best interest" of my children.  GAL has solely expressed stereotypes, false allegations, lies, etc about the domestic abuse in favor of the fathers position.

November 2023 My children came to my home to visit me after school and immediately after their visit, I was contacted my attorney stating my children contacted the GAL in distress regarding our visit that lasted less than 30 minutes and was in reality a nice time we spent playing with our dog in the front yard.  I have ring video to show the facts of that day.

December 2023 GAL made several inferences on live zoom stating that in her assumptions, I was inebriated when making the Domestic Violence reports and the father was never the aggressor in the relationship.  I have a copy of the transcript from that day backing up my evidence.  I never had a drinking or drug problem and that along with the other statements from the GAL was untrue and heavily biased against solely me.

December 2023 the DV detective have been told by the father and GAL that our children can not be seen by the DV abuse center.  Currently, our children still have not been seen.

December 2023 Investigations into my children extreme truancy and living conditions pertaining to their best interest has not been investigated in a fact finding method. My children have missed apps 20% of school attendance days while in the sole custody of the father and the GAL refused to investigate why my children was missing so many days, falling asleep while in school, not allowed to eat lunch, and failing grades.  None of these issues arose in the 23 years of being a mom to all 3 of my children, nor did it arise in the prior 14 years on raising my youngest 2 involved in this family court.

January 2024, I was accused of violations on an order that was never issued to me.  This order is cited by opposing counsel in the February 2024 document on record.  The order was found in a discovery of documents I received from my attorney in 2024 and that was the only time I ever saw the information opposing counsel accused me of violating.  Opposing counsel also made reference to and used the information within this previously unknown document in the 2024 court proceedings to highlight me in a derogatory manner.

January 2024 until current- ineffable avoidance of therapy and reunification between my children continues currently. I have been fighting since 2023 to at least see my children, so I fought for therapy and in January 2024, the father was court ordered to bring our children to attend therapy with me once a week for an hour.  This order has been violated to present day.  I have receipts of my paying the therapy costs, yet over 23 appointments have been willful no shows.  The therapy is only for the children and I, yet the father refuses to bring them to therapy and help pay for the cost 50/50 as ordered by the courts.  The judge have been repeatedly made aware and refuses to enforce.

July 2024, the father sent our children out of State without court consent and my acknowledgment to avoid having to sent them to therapy.  The GAL and Court was notified with no recourse or action.  I am not allowed to be involved in any part of my children life to include knowing their location, well being, medical information, school information, see them, etc.

August 2, 2024 I was court ordered to register my children in the school district 2 blocks from my home, although my children live 22 miles away in Chicago and I am not allowed to see, raise, nor be apart of their lives. When the father was questioned in front of the judge rather or not if he looked into schools near where they are staying he acknowledged that he didn't and he only wanted them to go to the school in my school district. Also, when questioned by his own lawyer as to the name of the school, the father didn't remember the name of the school our children has attended for the last year he has had sole custody nor did he consider the mental strain on the children having to be driven 22 miles each direction to and from school everyday. (Again, in the transcripts)

August 5 and August 9 2024 an emergency hiring was set to enforce the August 2, 2024 court order for me to register my children in school and the attorney that the judge ordered to represent me did not show up in court on that day. During the proceeding as I requested an continuance since the court ordered attorney didn't show, the judge stated that it didn't matter, I was going to be thrown in jail if registration wasn't done immediately and when I tried to inform the judge that I didn't receive a copy of the order until August 5th and I needed the order to take to the school district because without it I would be in violation of the 105 ILCS Illinois school residency law. I was told that I didn't have rights to representation during that proceedings, I was not allowed to use my ADA accommodations previously established, and I was intimidated by Court Police, then later allowed to leave due to extreme anxiety that I suffered from. I was also ordered to pay my husband attorney fees, 100% of the GAL fees, and another penalty fee for my court ordered attorney failing to appear.

Notes:

1) parental rights were removed without a hearing with no history nor presence of any form of danger, abuse, neglect, negligence, etc to my children.
2) My children have been lied to about court proceedings and therapy.
3) My children truant absences from school in the 2023 school year
4) My calls being blocked and maintaining a loving parental relationship with both parents are being disallowed. Ever message in Talking Parents from the father has been violent, abusive and no focus on our children. Constant focus on what he feels and he won't let me be apart of our children's life because of his feelings about the divorce and parental relationship.
5) The GAL and Father is still willfully hindering the domestic violence investigation
6) The Judicial Abuse, Mental abuse, Financial abuse, Parental Alienation, and Custody interference.
7) The GAL stating in open court that her assumptions of me being inebriated when reporting domestic abuse to the police and her opinion of me as the aggressor in the domestic abuse should be considered.
8) Ultimately, I want to love and raise my children in a full custody or 50/50 setting and immediately stop/reverse the decisions made when I was under heightened mental, emotional, judicial and financial abuse from the beginning of this case.
9) My children have been weaponized against me by the father and GAL since the beginning of this case and beyond.

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAcSi8E%3d&portalid=0
to get more information and Zoom Meeting IDs.

FILED
4/4/2024 2:39 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022D530192
Calendar, Y
27126182

FILED DATE: 4/4/2024 2:39 PM  2022D530192

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION**

IN RE THE MARRIAGE OF:                )
                                       )
BRANDIE EDWARDS,                       )
                     Petitioner,       )
                                       )      Case No. ~~22 D 530192~~ 2022D530192
vs,                                    )      Cal. Y
                                       )
                                       )
BARRY EDWARDS,                         )
                     Respondent.       )      Remote Court Date: 4/19/2024 10:00 AM - 10:05 AM

## PETITION FOR RULE TO SHOW CAUSE

NOW COMES the Petitioner, BRANDIE EDWARDS (hereinafter "BRANDIE"), by and through her attorneys, PESCE LAW GROUP, P.C. and LAW OFFICE OF MARGARET H. WEGING, INC., to move this Honorable Court, in accordance with Section 750 ILCS 5/508 of the Illinois Marriage and Dissolution of Marriage Act, to order the Respondent, BARRY EDWARDS (hereinafter "BARRY"), to show cause why he should not be held in indirect civil contempt for failing to comply with the Order entered on January 29, 2024 and in support thereof, states as follows:

## APPLICABLE LAW

1. "(b) In every proceeding for the enforcement of an order or judgment when the court finds that the failure to comply with the order or judgment was without compelling cause or justification, *__the court shall__* (emphasis added) order the party against whom the proceeding is brought to pay promptly the costs and reasonable attorney's fees of the prevailing party."

**750 ILCS 5/508**

1

## BACKGROUND

2. On or about December 31, 2001, the parties were lawfully married to each other.

3. As a result of the marriage, three (3) children were born to the parties, namely: twins B.E. III. and B.E. born September 17, 2009, presently 14 years of age; and B.E. who is currently 22 years of age and emancipated.

4. On or about July 31, 2023, BARRY moved from the marital home in Tinley Park, Illinois to Chicago, Illinois.

5. On or about August 14, 2023, an Order was entered with BARRY receiving temporary primary parenting time and BRANDIE's parenting time with the minor children being reserved pending the outcome of a 215 Evaluation and 604.10(b) Evaluation.

6. On January 29, 2024, the Order of August 14, 2023 was modified to stay the provisions of the Order of August 14, 2023 regarding the 215 evaluation and ordered family therapy for BRANDIE and the minor children.

7. On January 29, 2024 an Order was entered by this Honorable Court which provided in part:

> "3...The parties shall seek out family therapy for Brandie and the minor children. The parties shall follow the recommendations of the therapists as it relates to the frequency and duration of family therapy..."

**(Attached hereto and made a part hereof as EXHIBIT A)**

## COUNT I: FAILURE TO ATTEND FAMILY THERAPY SESSIONS

8. BRANDIE hereby re-states and re-alleges paragraphs one through seven above and incorporates them in their entirety into COUNT I.

9. From the entry of the Order entered on January 29, 2024 to the present date, BARRY only brought the minor children once to family therapy on March 19, 2024. At all other

2

FILED DATE: 4/4/2024 2:39 PM    2022D530192

times, BARRY willfully and intentionally, without cause or justification, failed and refused to bring said minor children to family therapy.

10. As a result, BRANDIE has incurred $1,040.00 for payment of invoices to the family therapist for cancellations caused by BARRY.

11. Since January 29, 2024 to the present date, BRANDIE contacted BARRY, multiple times via texts and Talking Parents, regarding failure to attend family therapy and in provided multiple future dates for the minor children to attend family therapy.

12. Despite the Order entered on January 29, 2024 and BRANDIE's request for compliance, BARRY has willfully and intentionally, without compelling cause or justification, refused to comply with his court-ordered family therapy and, thus, is in direct violation of the aforementioned Order. As a result, BARRY has forced BRANDIE to bring this matter to this Honorable Court's attention.

13. But for BARRY's failure to comply as ordered, BRANDIE would not have to file this Petition.

14. As a direct and sole result of BARRY's failure to comply with the Order entered on January 29, 2024, BRANDIE has incurred reasonable and necessary attorney's fees and costs, in the preparation, presentation and prosecution of this Petition, which she should not fairly have to bear.

WHEREFORE, the Petitioner, BRANDIE EDWARDS, respectfully prays that this Honorable Court Order as follows:

A. Issue a Rule requiring BARRY to show cause why he should not be held in indirect civil contempt of Court for failing to abide by Order entered on January 29, 2024;

3

FILED DATE: 4/4/2024 2:39 PM 2022D530192

B. Issue a body attachment should BARRY fail to appear in Court after being duly notified;

C. Order such penalties for contempt this Court deems fair and appropriate including, but not limited to, incarceration;

D. Order and compel BARRY to bring the minor children to family therapy on a continuing weekly basis;

E. Order BARRY to pay the reasonable and necessary attorney's fees and costs incurred by BRANDIE to bring this Petition; and

F. Grant such other relief that this Honorable Court deems fair and equitable.

## COUNT II: FAILURE TO PAY FOR FAMILY THERAPY

15. BRANDIE hereby re-states and re-alleges paragraphs one through fourteen in Count and incorporates them in their entirety into COUNT II.

16. On January 24, 2024 an Order was enter by this Honorable Court which addressed payment for the family therapy, in pertinent part, as follows:

> "4. The parties shall split the cost of family therapy equally, 50/50 subject to reallocation."

17. Since January 29, 2024 to the present date, BRANDIE contacted BARRY, multiple times via texts and Talking Parents, regarding failure to remit payment for his share of the costs of family therapy.

18. Despite the Order entered on January 29, 2024 and BRANDIE's request for compliance, BARRY has willfully and intentionally, without compelling cause or justification, refused to comply with his court-ordered family therapy contribution obligation and, thus, is in direct violation of the aforementioned Order. As a result, BARRY has forced BRANDIE to bring this matter to this Honorable Court's attention.

4

19. But for BARRY's failure to comply as ordered, BRANDIE would not have to file this Petition.

20. As a direct and sole result of BARRY's failure to comply with the Order entered on January 29, 2024, BRANDIE has incurred reasonable and necessary attorney's fees and costs, in the preparation, presentation and prosecution of this Petition, which she should not fairly have to bear

WHEREFORE, the Petitioner, BRANDIE EDWARDS, respectfully prays that this Honorable Court Order as follows:

A. Issue a Rule requiring BARRY to show cause why he should not be held in indirect civil contempt of Court for failing to abide by the Order of January 24, 2024;

B. Issue a body attachment should BARRY fail to appear in Court after being duly notified;

C. Order such penalties for contempt this Court deems fair and appropriate including, but not limited to, incarceration;

D. Order and compel BARRY to remit payment to BRANDIE as and for his 50% share of family therapy expenses incurred by BRANDIE;

E. Order BARRY to pay the reasonable and necessary attorney's fees and costs incurred by BRANDIE to bring this Petition; and

F. Grant such other relief that this Honorable Court deems fair and equitable.

5

FILED DATE: 4/4/2024 2:39 PM    2022D530192

Respectfully Submitted,

_Brandie Edwards_
Brandie Edwards

_WH Wegay_
Attorney for Petitioner

STATE OF ILLINOIS      )
COUNTY OF COOK      )

## VERIFICATION BY CERTIFICATION

Under penalties as provided by law pursuant to section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid, that I verily believe the same to be true.

_Brandie Edwards_            Date: ___04/04/2024___
Brandie Edwards

**Pesce Law Group, P.C.**
Attorneys for Petitioner
Danada Professional Center
2323 Naperville Road
Suite 135
Naperville, Illinois 60563
Telephone: (630) 505-2800
Facsimile: (630) 505-2801
Attorney Number: 59046

6

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAcSi8E%3d&portalid=0
to get more information and Zoom Meeting IDs.
Remote Court Date: No hearing scheduled

*Brandie Edwards original Filing*

FILED
4/28/2022 10:20 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022D530192
Calendar, Y
17683072

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT-DOMESTIC RELATIONS DIVISION**

IN RE THE MARRIAGE OF:

BRANDIE EDWARDS,

    *Petitioner,*

    and

BARRY EDWARDS,

    *Respondent.*

Case No: 2022 D5 30192

Cal. Y

**EXHIBIT A – AFFIDAVIT OF BRANDI EDWARDS IN SUPPORT OF HER**
**PETITION FOR AN EMERGENCY ORDER OF PROTECTION**

The undersigned, BRANDIE EDWARDS ("BRANDIE"), having been duly sworn upon oath, deposes and states as follows:

1. That I am the Petitioner in the above captioned case.

2. That BARRY EDWARDS ("BARRY") is the Respondent in the above captioned case.

3. That I currently reside at 17342 Cambridge Place, Tinley Park, Illinois 60487.

4. That BARRY'S last known address is also 17342 Cambridge Place, Tinley Park, Illinois 60487.

5. That on or about December 31, 2001, I was lawfully married to BARRY in the County of Cook, State of Illinois, and our marriage was duly registered therein.

6. That three (3) children were born to BARRY and me during our marriage, namely: twins, B.A.III. and Brie.E., born September 17, 2009, and presently twelve (12) years of age; and Bria.E., who is currently twenty (20) years of age and emancipated.

7. That on or about April 26, 2022, I filed my Verified Petition for Dissolution of Marriage against BARRY, which remains pending and undetermined.

8. That on or about April 26, 2022, at approximately 9:00 a.m., BARRY became verbally abusive towards me and began calling me names such as "stupid" and "bitch."

Page 1 of 4

9. That I asked BARRY to leave the home because he was being verbally abusive towards me, to which BARRY declined, and remained in the home continuing to verbally assault me.

10. When I realized that the verbal abuse would not end, and BARRY was refusing to leave, I called the police in order to have BARRY removed from my home.

11. That before the police showed up to my house, I was pleading for BARRY to just leave the home, and as I was pleading with him to leave BARRY purposefully slammed a door in my face. The door swung closed and struck me in the nose and face, causing me to be injured and hurt.

12. That after BARRY slammed the door in my face, BARRY said to me "I don't want to talk to you, bitch."

13. That my oldest daughter was going to take the twins to my mother's house, the children's maternal grandmother, so that they would not be present for BARRY's abusive behavior towards me. However, the children were still present for the entire incident.

14. That after BARRY slammed the door in my face, I retreated to my bedroom to escape from BARRY's abusive behavior.

15. That I was still on the phone with the police dispatcher when I retreated into my bedroom, and the police dispatcher told me to remain in my room because she could hear BARRY yelling and screaming in the background, and could hear how angry he had become.

16. That the police arrived shortly after, and told BARRY to leave the residence. BARRY complied.

17. That at approximately 1:00 p.m., BARRY again returned to my home to continue verbally abusing me.

18. That when BARRY returned, he said "I can't believe you did this to me, you stupid bitch." BARRY proceeded to call me nasty names and started screaming and yelling at me again.

19. That I was forced to call the police again after BARRY returned due to the verbal assault I was experiencing, and when the police arrived, they forced BARRY to leave the residence again.

20. That on or about April 21, 2022, BARRY became verbally abusive towards me, after the two of us argued for some time, BARRY grabbed me by the shoulders and began shaking me violently.

21. That BARRY grabbing me and shaking me was extremely offensive, as I was unable to escape from BARRY's grasp and I had no idea what he was capable of in that moment. The minor children were also present for this incident.

22. That BARRY has grabbed me and shook me violently on numerous occasions, all of which were in the presence of the minor children.

23. That on or about April 20, 2022, BARRY and I were arguing, and as I was walking away from BARRY, he threw his cell phone at my head, just barely missing my head.

24. That on or about April 14, 2022, I was sleeping alone in my bedroom when BARRY returned home from work. The day before, on or about April 13, 2022, I attended a session with my therapist where my therapist recommended that BARRY and I remain friends for the time being, and to not act as though we were married.

25. After BARRY returned home from work, BARRY entered my bedroom where I was still sleeping. BARRY grabbed me and pressed his body up against mine. I immediately told BARRY to stop what he was doing.

26. That BARRY proceeding to press his body against mine, he put his hand around my throat, and was telling me that he was going to have sexual intercourse with me. I told BARRY "no" and asked him to stop what he was doing, however BARRY ignored my pleas and insisted that we make love, whether or not I agreed.

27. BARRY then said to me, "I'm the man, I will do whatever I want."

28. That as I was screaming and begging BARRY to stop, BARRY forcibly penetrated me. The minor children were in the other room sleeping at the time of the incident.

29. That BARRY eventually stopped, however I do not have any recollection as to what happened afterwards, as I was severely emotionally distressed due to the abuse suffered at the hands of BARRY.

30. That I am very negatively affected by all of this. BARRY's behavior is causing me extreme mental and emotional anguish, loss of sleep and when able to sleep, extreme tossing and turning all night.

31. That I have become severely emotionally distraught due to BARRY's verbal and physical abuse of me, and I fear that if BARRY is not stopped by this Court, he will continue to abuse me verbally and physically, and BARRY's actions may become more aggressive and abusive as a result.

32. That without this Court's intervention, I fear that BARRY will continue his harassment and abusive behavior towards me, and that his actions will continue to escalate.

33. That I fear, unless BARRY is stopped by this Court, he is capable of seriously harming me emotionally, mentally, and physically.

34. That unless BARRY is stopped by this Court, I fear that he will continue to harass me and abuse me verbally, emotionally, and psychologically.

35. That I am fearful for my own safety and I feel that sooner or later, BARRY is going to intentionally or unintentionally harm one of us.

36. That if BARRY knew about this Order of Protection today, he would try to stop me from getting it.

37. That BARRY is getting worse and worse and he is no longer able to control his behavior and if not stopped, will seriously hurt me.

Further Affiant Sayeth Not.

Affiant,

_Brandie Edwards_

BRANDIE EDWARDS

Subscribed and sworn to before me
this 27th day of APRIL 2022.

_Fred A. Joshua_

Notary Public

FRED A JOSHUA
OFFICIAL SEAL
Notary Public, State of Illinois
My Commission Expires
April 18, 2023

Fred A. Joshua
FRED A. JOSHUA P.C.
Attorneys for Petitioner
10005 South Roberts Road
Palos Hills, Illinois 60465
T 312 912 9800 | F 312 256 2066
Firm ID. 45230
FJ@joshualegal.com

Page 4 of 4

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAcSi8E%3d&portalid=0
to get more information and Zoom Meeting IDs.
Remote Court Date: No hearing scheduled

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS COUNTY
DEPARTMENT, DOMESTIC RELATIONS DIVISION

FILED
10/20/2023 4:41 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022D530192
Calendar, Y
24886618

IN RE THE MARRIAGE OF:  )
)
BRANDIE EDWARDS,  )
Petitioner/Counter-Respondent,  )
and  )  Case No. 2022D530192
)
BARRY EDWARDS,  )
Respondent/Counter-Petitioner.  )

**COUNTER-PETITION FOR DISSOLUTION OF MARRIAGE**

NOW COMES, the Respondent/Counter-Petitioner (hereinafter "BARRY"), by and through his attorneys, JANUARY FAMILY LAW, LLC, pursuant to 750 ILCS 5/401, *et seq.*, petitions this Honorable Court for a Judgment granting him a Dissolution of Marriage from the Petitioner/Counter-Respondent, BRANDIE EDWARDS (hereinafter "BRANDIE"), and in support thereof states as follows:

1.  BRANDI, is a resident of Cook County, State of Illinois and has maintained said residency for a period in excess of ninety (90) days next preceding the commencement of this action.

2.  EDWARD, is a resident of Cook County, State of Illinois and has maintained said residency for a period in excess of ninety (90) days next preceding the commencement of this action.

3.  To the best of EDWARD's knowledge, BRANDI filed a Petition for Dissolution of Marriage on April 26, 2022 with this Honorable Court and no other Petition for Legal Separation or pending proceedings involving the parties or their children are now pending in any other county, state or jurisdiction.

4.  BRANDI, is 44 years of age and is currently unemployed.

5.  EDWARD, is 46 years of age and is employed as a Truck Driver for the City of Chicago.

6.  That the parties lawfully joined in marriage on December 31, 2001 in the City of Chicago, County of Cook, State of Illinois where said marriage was registered.

7.  That irreconcilable differences have caused the irretrievable breakdown of their marriage; that their efforts at reconciliation have failed, and that future attempts at reconciliation would be impracticable and not in the best interests of the family.

8.  The parties live separate and apart within the meaning of the statute for a period in excess of six months.

9.  That three children were born to the parties, namely: twins, B.A III and Brie. E both born on September 17, 2009, and presently twelve (12) years of age, and Bria E., who is currently twenty (20) years of age and emancipated.

1

10. The parties hereto have never adopted any child or children and the BRANDIE is not now pregnant.

11. BARRY has been the primary caretaker of the minor children throughout their lives. BRANDIE has been suffering from mental health episodes sporadically for a significant period of time and has currently been ordered to seek mental evaluations. BARRY should be awarded the primary residential care of the minor children, physical possession, the majority of parenting time and sole parenting responsibilities. BRANDIE supervised parenting time should be "reserved" until the mental health evaluations are completed and the Guardian ad Litem makes a recommendation concerning any parenting time; and/or, restrictions of parenting time or supervised parenting time.

12. During the marriage of the parties, they acquired certain marital property within the meaning and intendment of Section 503 of the Illinois Marriage and Dissolution of Marriage Act. BARRY, should be awarded his fair, just and equitable share and proportion of said marital property, which includes the living room set, television, sofa, white rug, and minor children's bedroom sets.

13. BARRY, acquired certain non-marital property within the meaning and intendment of the Illinois Marriage and Dissolution of Marriage Act. That the said property should be adjudicated by this Court to be the non-marital property of the Respondent/Counter-Petitioner, BARRY, and should be assigned to him as his sole and exclusive property.

14. BARRY should be responsible for the parties' time share.

15. That the parties should be responsible for their own debts.

16. That the parties be awarded their own retirement accounts.

17. That both parties each "waive" the right to maintenance.

18. That the parties "reserve" the right to child support.

19. That each of the parties should be ordered to pay their own attorney's fees and costs in this matter.

WHEREFORE, Respondent/Counter-Petitioner, BARRY EDWARDS, prays as follows:

A. For a Judgment of this Court granting the parties a Dissolution of Marriage in accordance with the equities in this cause made and provided.

B. For a Judgment of this Court waiving each of the parties from claiming any rights to maintenance from the order, either past, present or future.

For a Judgment of this Court awarding Petitioner his fair, just and equitable interest in and to the marital property of the parties, including living room set, television, sofa, white rug, and minor children's bedroom sets.

C. Awarding each party their non-marital property;

D. Reserving the parties right to child support until mental health evaluations are completed and Guardian ad Litem's investigation is completed;

E. For a Judgment awarding BARRY primary parenting time, physical possession, and sole decision making for the minor children, and BRANDIE not be granted parenting time as it is reserved until mental health

2

evaluations are completed and Guardian ad Litem makes recommendations concerning parenting time; and/or restrictions or supervised parenting time;

F.   Awarding the parties their own retirement accounts and responsibility of their own debts;

G.   Awarding BARRY sole responsibility of the parties Time Share;

H.   For a Judgment of this Court ordering each of the parties to pay and defray his or her costs and attorney's fees in their entirety;

I.   For such other and further relief as the Court may deem equitable in the premises.

Respectfully Submitted,

Barry Edwards (Oct 20, 2023 11:15 CDT)

**BARRY EDWARDS**, *Respondent/Counter-Petitioner*

By:      */s/ Amil Alkass*
         *One of Attorneys for Respondent/Counter-Petitioner*

Amil Alkass
January Family Law, LLC
111 W. Washington St., Suite 1601
Chicago, IL 60602
Firm No. 63765
312-970-0013
amil@januarylawchicago.com

3

## CERTIFICATION

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure the undersigned certifies that the Statements set forth in this pleading are true and correct except as to matters stated to be on information and belief and as to those matters the undersigned certifies and states that he verily believes them to be true.

Barry Edwards (Oct 20, 2023 11:15 CDT)

Barry Edwards

Amil Alkass
January Family Law, LLC
111 W. Washington St., Suite 1601
Chicago, IL 60602
Firm No. 63765
312-970-0013
amil@januarylawchicago.com

4

# Counter-PDOM Edwards 2023-10-20

Final Audit Report                                                                 2023-10-20

| | |
|---|---|
| Created: | 2023-10-20 |
| By: | Sydney Gresham (office@januarylawchicago.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAA1gh2Kw4rhbKiMZbrwT0I3K9xktiumu1 |

## "Counter-PDOM Edwards 2023-10-20" History

📄 Document created by Sydney Gresham (office@januarylawchicago.com)
2023-10-20 - 3:27:40 PM GMT

📧 Document emailed to barrytedwards38@yahoo.com for signature
2023-10-20 - 3:28:47 PM GMT

📄 Email viewed by barrytedwards38@yahoo.com
2023-10-20 - 4:13:45 PM GMT

✍ Signer barrytedwards38@yahoo.com entered name at signing as Barry Edwards
2023-10-20 - 4:14:58 PM GMT

✍ Document e-signed by Barry Edwards (barrytedwards38@yahoo.com)
Signature Date: 2023-10-20 - 4:15:00 PM GMT - Time Source: server

✅ Agreement completed.
2023-10-20 - 4:15:00 PM GMT

**Adobe Acrobat Sign**

All Domestic Relations cases will be heard by phone or video.
Go to http://www.cookcountycourt.org/LinkClick.aspx?fileticket=G7A8KAcSi8E%3d&portalid=0
    to get more information and Zoom Meeting IDs.
Remote Court Date: No hearing scheduled

FILED
8/9/2023 12:16 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022D530192
Calendar, Y
23891586

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION**

BRANDIE EDWARDS,                     )
    Petitioner,                          )
                                         )
                                         )
    and                                  )     No. 2022D530192
                                         )
                                         )
BARRY EDWARDS,                       )
    Respondent.                          )

## MOTION FOR ILLINOIS SUPREME COURT RULE 215 MENTAL HEALTH EVALUATION AND/OR 750 ILCS 5/604.10(b) EVALUATION AND FOR OTHER RELIEF

NOW COMES the Guardian ad Litem, DANIELLE L. VLCEK, and pursuant to Illinois Supreme Court Rule 215, 750 ILCS 5/604.10(b), 750 ILCS 5/602.5(c) and 750 ILCS 5/602.7(b), and moves this Honorable Court to order Petitioner, BRANDIE EDWARDS, to undergo a parenting evaluation. In support of her Motion, Petitioner states as follows:

1.  This Court is proper to have jurisdiction over the parties, *735 ILCS 5/2-209(5)*, and over the subject matter.

2.  The parties were lawfully married on December 31, 2001.

3.  Petitioner filed a Petition for Dissolution of Marriage on April 26, 2022 that remains pending and undetermined.

4.  Twin children were born to the parties during the course of the marriage, namely B.E. and B.E., both thirteen (13) years of age.

5.  Danielle Vlcek was appointed as Guardian ad Litem for the minor children on July 10, 2023.

6.  The Guardian ad Litem met with Respondent via zoom and the minor children in person in her office.

7.  The Guardian ad Litem reviewed the docket (orders and pleadings), reviewed correspondence from both parties, and had brief phone calls with the Petitioner since her appointment.

8.  The Guardian ad Litem has been able to view both parties' behavior and demeanor during court appearances on July 20, 2023 and August 9, 2023.

1

9. The Guardian ad Litem received over fifty (50) text messages from Petitioner containing various TikTok videos and social media posts.

10. Based on the Guardian ad Litem's investigation so far, she has concerns about Petitioner's mental health and how her mental health impacts her ability to parent her children.

11. On August 9, 2023, the Court gave the Guardian ad Litem authority to file Motions she believes to be in the best interest of the minor children.

12. The Guardian ad Litem has concerns about the children's current living environment with Petitioner and believes this Motion is in the children's best interests.

### COUNT I: 750 ILCS 5/604.10(b) AND/OR SUPREME COURT RULE 215 MENTAL HEALTH EVALUATION

13. The Guardian ad Litem restates and incorporates paragraphs 1 – 12 as if stated herein.

14. Illinois Supreme Court Rule 215 states, in relevant part, as follows:

> "In any action in which the physical or mental condition of a party or of a person in the party's custody or legal control is in controversy, the court, upon notice and on motion made within a reasonable time before the trial, may order such party to submit to a physical or mental examination by a licensed professional in a discipline related to the physical or mental condition which is involved."
> Rule 215 - Physical and Mental Examination of Parties and Other Persons, Ill. Sup. Ct. R. 215

15. The Guardian ad Litem has concerns about Petitioner's mental health.

16. Psychological testing can assist the court in learning of Petitioner's behavioral tendencies, mental health issues and psychological functioning.

17. While the Illinois Supreme Court Rule 215 evaluation will not determine whether Petitioner's mental health impacts her ability to parent, it will give guidance as to whether any treatment would be helpful in dealing with Petitioner's mental health.

18. An evaluation pursuant to 750 ILCS 5/604.10(b) would provide the court with an assessment as to whether or not Petitioner's mental health is impacting her parenting.

19. Said 750 ILCS 5/604.10(b) evaluation could be ordered in limited scope, requesting an evaluation into whether or not Petitioner's mental health impacts

2

FILED DATE: 8/9/2023 12:16 PM    2022D530192

her ability to parent.

20. Section 604.10(b) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/ 604.10(b)) provides, in relevant part:

> (b) Court's professional. The court may seek the advice of any professional, whether or not regularly employed by the court, to assist the court in determining the child's best interests. The advice to the court shall be in writing and sent by the professional to counsel for the parties and to the court not later than 60 days before the date on which the trial court reasonably anticipates the hearing on the allocation of parental responsibilities will commence. The court may review the writing upon receipt. The writing may be admitted into evidence without testimony from its author, unless a party objects. A professional consulted by the court shall testify as the court's witness and be subject to cross-examination. The court shall order all costs and fees of the professional to be paid by one or more of the parties, subject to reallocation in accordance with subsection (a) of Section 508.

21. The Court should order Petitioner to participate in a limited scope evaluation pursuant to 750 ILCS 5/604.10(b) and/or a Supreme Court Rule 215 Mental Health Evaluation.

22. It is in the children's best interests that these evaluations be conducted prior to determining a final allocation of parenting time and decision-making authority.

WHEREFORE, the Guardian ad Litem, DANIELLE L. VLCEK, respectfully requests this Honorable Court Order the following:

A.    Petitioner be ordered to participate in 750 ILCS 5/604.10(b) and/or a Supreme Court Rule 215 Mental Health Evaluation;

B.    Petitioner be ordered to pay any and all fees affiliated with the evaluations; and,

C.    For any other relief this Honorable Court deems equitable and just.

## COUNT II: TEMPORARY ALLOCATION OF PARENTING TIME AND DECISION-MAKING AUTHORITY

23. The Guardian ad Litem restates and incorporates paragraphs 1 – 12 as if stated herein.

3

24. On April 29, 2022, Petitioner was granted temporary exclusive possession of the parties' marital home by way of an Emergency Order of Protection. Respondent's parenting time was reserved in that Emergency Order of Protection.

25. On May 19, 2022, the Emergency Order of Protection was vacated.

26. On June 6, 2023, Petitioner obtained an Emergency Order of Protection which gave her temporary exclusive possession of the parties' marital home. Respondent's parenting time was reserved.

27. On July 20, 2023, the Emergency Order of Protection was vacated.

28. On July 20, 2023, an Order of temporary parenting time was entered pending the Guardian ad Litem's investigation. The parties were to alternate parenting time with the children on a bi-weekly basis.

29. The children currently reside with Petitioner in the marital home.

30. At no point during the pendency of these proceedings have any other orders regarding the marital home been entered aside from the Emergency Orders of Protection, both of which have been vacated.

31. The Guardian ad Litem had an opportunity to speak with the minor children since the entry of the temporary parenting time order on July 20, 2023.

32. As a result of her investigation so far, the Guardian ad Litem believes it is in the minor children's best interests to temporarily allocate Respondent primary parenting time and decision-making authority for the minor children pending Petitioner's psychological evaluations as requested in Count I of this Motion.

33. It is within the Court's discretion to allocate decision-making responsibility for each significant issue affecting the child, including, but not limited to, education, health, religion, and extracurricular activities. 750 ILCS 5/602.5.

34. Allocation of decision-making responsibility and parenting time shall be allocated according to the child's best interests. The best interest factors include, but are not limited to, the following:

   a. the wishes of the child, taking into account the child's maturity and ability to express reasoned and independent preferences as to decision-making;

   b. the child's adjustment to his or her home, school, and community;

   c. the mental and physical health of all individuals involved;

4

FILED DATE: 8/9/2023 12:16 PM   2022D530192

d.   the ability of the parents to cooperate to make decisions, or the level of conflict between the parties that may affect their ability to share decision-making;

e.   the level of each parent's participation in past significant decision-making with respect to the child;

f.   any prior agreement or course of conduct between the parents relating to decision-making with respect to the child;

g.   the wishes of the parents;

h.   the child's needs;

i.   the distance between the parents' residences, the cost and difficulty of transporting the child, each parent's and the child's daily schedules, and the ability of the parents to cooperate in the arrangement;

j.   whether a restriction on decision-making is appropriate under Section 603.10;

k.   the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child;

l.   the physical violence or threat of physical violence by the child's parent directed against the child;

m.   the occurrence of abuse against the child or other member of the child's household;

n.   whether one of the parents is a sex offender, and if so, the exact nature of the offense and what, if any, treatment in which the parent has successfully participated; and

o.   any other factor that the court expressly finds to be relevant.

750 ILCS 5/602.5(c) and 750 ILCS 5/602.7(b)

35. The Guardian ad Litem is prepared to give an oral report as to her investigation and why the best interest factors support providing Respondent temporary allocation of parenting time and decision-making responsibility for the minor children.

36. In light of Petitioner posting to her Facebook account an email the Guardian ad Litem sent to her, the Guardian ad Litem believes it is in the children's best interest that the information learned from the children not be specifically written in this Motion.

5

FILED DATE: 8/9/2023 12:16 PM   2022D530192

WHEREFORE, the Guardian ad Litem, respectfully requests this Honorable Court Order the following:

A.  Respondent be granted temporary primary parenting time with the minor children;

B.  Respondent be granted temporary sole decision-making authority for the minor children's medical, dental, extracurricular activity, and school-related decisions; and,

C.  For any other relief this Honorable Court deems equitable and just.

Respectfully submitted,

DANIELLE L. VLCEK
Guardian ad Litem

## ATTORNEY CERTIFICATION

I, Danielle L. Vlcek, the undersigned attorney, certify that I have read the foregoing Motion. To the best of my knowledge, information and belief formed after reasonable inquiry, it is well grounded in fact and law and it is not interposed for any improper purpose.

Danielle L. Vlcek
Guardian ad Litem

Danielle L. Vlcek
Guardian ad Litem
Firm ID # 58664
5650 S. Brainard Avenue, Suite 250
Countryside, Illinois 60525
(708) 986 – 7171
VLCEKLAW@gmail.com

6



6:41      5G UC ▲ 🔋 75%

←   Bj, Briani, Tiffany, (219) 588-...   🎥 ⋮

Wednesday, Jun 28, 2023 • 11:37 AM

Bj created this group MMS with you and 14 others

**Bj**

Hey I'm embarrassed but I have to do my due diligence on this . As you know me and Brandie is getting a divorce but before then I have to get this order of protection off me so I can at least see my kids . I've talked to a lawyer and she says if I don't have representation this order can go as far as two years . Brandie as of this moment wants to really hurt me but she's not thinking well the lawyer is 5000 but I need 3500 to start off I wouldn't be asking this but I need help on this I know I will have 3500 on the 7th but not all of it if anyone have anything to give I will pay back within these next two months but I can't go without seeing my kids for two years that's crazy . You all do t have to respond on here but y'all can contact individually. Brandie is sick mentally but I can't worry about that right now. Just contact me individually and we can go from there  thank you

👍

☺   Text message     🖼   ⊕   〰

*(handwritten margin notes):*

Copy of text message's Barry Edwards sent on 6/28/23 showing his behavior during this divorce.

pg 1 of 2

The lawyer he referenced in this text is GAL Danielle Vlcek.

pg 2 of 2

B  Bj

Hey just letting people know I just got off the phone with about three lawyers and no matter what it's ridiculous but this has to be done I hate doing this but fuck my pride they saying she can have my kids order of protection last two more years so if y'all know people who knows me it can be a dollar to 100 everything counts because I'm basically either over my uncles house or sleeping in my car and her mind frame is I want him to feel pain she calls me a great dad but a lousy husband but mom will keep a great dad away from his kids that's how you know this personal on levels we can't comprehend because she's not right mentally but like I said I need help so contact me personally not on this thread I will grateful for whatever because this is terrible I want no one to feel sorry for me just know this dude has been away from his kids long enough because of bullshit and could extend longer my pride is out the door

Case: 1:24-cv-08802 Document #: 1 Filed: 09/24/24 Page 67 of 68 PageID #:67

Text Message
Dec 13, 2021 at 11:01 AM

*Example of text messages by Barry Edwards sent to multiple people about me as a mother and wife.*

Barry Edwards

The last twenty years Brandie and I have gone through a lot and through those years I've lied and let her down . My wife has supported me through jobs , coronavirus and had the mind frame of wanting our family to aspire for and throughout this whole time I didn't see this I was basically in survival mode not seeing what she was seeing but she definitely deserves her flowers for that but now we are at a crossroads in our marriage and I like to say this one's on me and not because of cheating but dishonesty and that can break a person over the years as I type I am not the same person from over the years but I haven't completely changed and that's where god will see me through. My and kids are

8:30

  

89

10 People >

she definitely deserves her flowers for that but now we are at a crossroads in our marriage and I like to say this one's on me and not because of cheating but dishonesty and that can break a person over the years as I type I am not the same person from over the years but I haven't completely changed and that's where god will see me through. My and kids are everything to me and I will definitely do anything to change things I know what I've done was juvenile and quite frankly the dumbest thing ever. My wife deserves the best actually from having Briani and studying for her bachelors while Briani was baby while I worked she never complained and she continued on to her masters . People my wife sees things differently from everyone I say she's like a beautiful mind and she has a beautiful heart but I'm sorry I hurt it . I'm a man and I will be sleigh with god but I'm better with god and my wife next to me . She says I never let her hear me give her her flowers well here it is she is a superwoman and I took

 it for granted .

+ Text Message

